### MORRISDALE COAL CO. v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. November 17, 1910.)

No. 1,352.

1. CARRIERS (§ 36*)—INTERSTATE COMMERCE ACT—REMEDY FOR VIOLATION—JURISDICTION OF COURTS.

The effect of Interstate Commerce Act Feb. 4, 1887. c. 104. 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), as amended, including the amendment by Act June 29, 1906, c. 3591. 34 Stat. 584 (U. S. Comp. St. Supp. 1909, p.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
183 F.—59

1149), as construed by the Supreme Court, is not merely to suspend the right of a shipper to maintain an action at law to recover damages resulting from an unreasonable rate or discriminating regulation or practice established by an interstate carrier while such rate or regulation remains in force, but to supersede such right .entirely, and substitute therefor the remedy provided by the act itself; and the shipper's independent right of action in a court is not revived by the abolition of the unlawful rate or regulation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. § 36.*].

2. CARRIERS (§ 36*)—INTERSTATE COMMERCE ACT—REMEDY FOR VIOLATION—JURISDICTION OF COURTS—DISCRIMINATION IN DISTRIBUTION OF CARS.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), as amended, including the amendment by Act June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1909, p. 1149), a party claiming to be injured by a discriminatory rule for the distribution of coal cars by an interstate railroad cannot maintain in a court of law an action for the recovery of damages before the Interstate Commerce Commission has investigated the case, and determined by its report that the rule is or was discriminatory.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. § 36.*]

COURTS (§ 405*)—FEDERAL COURTS—JURISDICTION OF CIRCUIT COURT OF APPEALS.

If a case in a District or Circuit Court is dismissed by final judgment or decree, either for want of jurisdiction of the parties or for want of power as a federal court to take jurisdiction of the subject-matter, without the decision of any other question, so that the only question presented by the record is such question of jurisdiction, the judgment or decree can be reviewed by the Supreme Court only, on appeal or writ of error, with a certificate from the lower court of the question of jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1099; Dec. Dig. § 405.*

Jurisdiction of Circuit Courts of Appeals in general, see notes to Lau Ow Bew v. United States, 1 C. C. A. 6, United States Freehold Land & Emigration Co. v. Gallegos, 32 C. C. A. 475.]

4. COURTS (§§ 385. 405*)—FEDERAL COURTS—JURISDICTION OF CIRCUIT COURT OF APPEALS—SUPREME COURT.

If a case in a District or Circuit Court goes to trial or hearing on a question of jurisdiction and on the merits, and the question of jurisdiction is one concerning either the jurisdiction of the parties or the power of the court as a federal court to take jurisdiction of the subject-matter, the party dissatisfied with the final judgment or decree, whether plaintiff or defendant, may waive all errors on the merits, and take the case directly to the Supreme Court on appeal or error, with a certificate from the lower court of the question of jurisdiction, or he may assign errors on the merits and on the question of jurisdiction, and take the whole case on appeal or error to the proper Circuit Court of Appeals. In the latter proceeding, the Circuit Court of Appeals may certify the question of jurisdiction to the Supreme Court, and defer decision upon the other questions until the answer of the Supreme Court shall have been received.

[Ed. Note.—For other cases, see Courts, Dec. Dig. §§ 385, 405.*]

5. COURTS (§ 405*)—FEDERAL COURTS—JURISDICTION OF CIRCUIT COURT OF APPEALS.

If a case in a District or Circuit Court is dismissed by final judgment or decree for want of jurisdiction, either after a hearing on a question of jurisdiction only or after a hearing or a trial on a question of jurisdiction and the merits, and the question of jurisdiction is not one concerning jurisdiction of the parties or concerning the power of the court

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as a federal court to take jurisdiction of the subject-matter of the action, but is a question of jurisdiction relating to the general authority of the court as a judicial tribunal, the party dissatisfied with the judgment or decree, whether plaintiff or defendant, may have the judgment or decree reviewed on appeal or error by the proper Circuit Court of Appeals only.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1099; Dec. Dig. § 405.*]

**6. COURTS (§ 405*)—FEDERAL COURTS—JURISDICTION OF CIRCUIT COURT OF APPEALS.**

An action at law in a federal court was tried on the merits before a jury and a special verdict rendered, subject to the determination of the law by the court. Pending a motion for judgment on the verdict, defendant filed a motion to dismiss on the ground that the court was without jurisdiction of the subject-matter of the action, which motion was sustained and judgment rendered thereon for the defendant. *Held*, that such judgment was reviewable on a writ of error by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 405.*]

Buffington, Circuit Judge, dissenting on the question of jurisdiction.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action at law by the Morrisdale Coal Company against the Pennsylvania Railroad Company. Judgment for defendant (176 Fed. 748), and plaintiff brings error. Affirmed.

William A. Glasgow, Jr., for plaintiff in error.

Francis I. Gowen, for defendant in error at first argument.

John G. Johnson, for defendant in error at second argument.

Before BUFFINGTON and LANNING, Circuit Judges, and BRADFORD, District Judge.

LANNING, Circuit Judge. This action was dismissed by the Circuit Court for want of jurisdiction. See 176 Fed. 748. It is an action by the plaintiff, Morrisdale Coal Company, to recover from the defendant, Pennsylvania Railroad Company, damages for the alleged violation of section 3 of the act to regulate commerce, approved February 4, 1887, which declares that:

"It shall be unlawful for any common carrier, subject to the provisions of this act, to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." Act Feb. 4, 1887, c. 104, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3155).

The claim of the plaintiff is that the distribution of coal cars amongst the mines of the Clearfield coal region of Pennsylvania, in which the plaintiff's mines are located, and the mines in other coal regions, during the years 1900 to 1905, inclusive, was unduly and unreasonably prejudicial and disadvantageous to the plaintiff. The rule under which that distribution was made was abolished by the railroad company on January 1, 1906, when it adopted and put into

operation a new rule of distribution. The action in this case was commenced March 3, 1908, more than two years after the rule of distribution now complained of had been abolished. The judgment of the Circuit Court was based on its understanding of the interpretation of the act to regulate commerce by the Supreme Court in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, and two or three other cases to be later referred to.

The Abilene Case was one in which an action was instituted to recover from the railroad company a sum of money equal to what the Abilene Cotton Oil Company declared was the excess over a reasonable charge which it had been compelled to pay to the railroad company for the transportation of cotton seed. It was conceded in the' opinion of the Supreme Court that at common law such an action would lie, and that the act to regulate commerce should not be construed as taking away the right unless such construction was imperatively required. But taking into consideration the remedial provisions of the act, and the destruction of them which would result from allowing a court and jury, without reference to prior action by the Interstate Commerce Commission, to find an established rate to be unreasonable, it was decided that, if the power existed in both courts and the commission to hear originally complaints in cases of alleged preferences in rates, an established schedule of rates might be found reasonable by the commission and unreasonable by a court, and thus give rise to a conflict which would render the enforcement of the act impossible. Referring to section 9 of the act, which provides that any person claiming to be damaged by any common carrier subject to the provisions of the act may either make complaint to the commission or bring suit for the recovery of damages in any District or Circuit Court of the United States of competent jurisdiction, but that he shall not have the right to pursue both of such remedies, the court said:

"We think that it inevitably follows from the context of the act that the independent right of an individual originally to maintain actions in courts to obtain pecuniary redress for violations of the act conferred by the ninth section must be confined to redress of such wrongs as can consistently with the context of the act be redressed by courts without previous action of the commission, and therefore does not imply the power in a court to primarily hear complaints concerning wrongs of the character of the one here complained of."

The conclusion of the court was that a shipper seeking reparation predicated upon the unreasonableness of an established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone, it was declared, is vested with power originally to entertain proceedings for the alteration of an established schedule.

The plaintiff in the present case has primarily invoked redress through the Circuit Court, and not through the Interstate Commerce Commission. But since the opinion in the Abilene Case dealt with the rule of procedure for the recovery of damages in a case of alleged unreasonable rates, while in the present case we deal with the rule of

procedure for redress in a case of an alleged unreasonable regulation for the distribution of cars not in operation when the action was commenced, the question arises whether the construction of the statute which excluded the Abilene Case from the class of cases that may be primarily instituted in a court also excludes such a case as the one now in hand. To answer the question, we must determine, first, whether a distinction exists between the Abilene Case and the present case by reason of the fact that the action in the present case was not commenced until after the rule complained of had been abolished; and, if not, then, second, whether a distinction exists by reason of the fact that in the Abilene Case the rule complained of was one affecting rates, while in the present case it is one concerning the distribution of cars. As to whether the doctrine of the Abilene Case is inapplicable because the present action was not commenced until after the rule complained of had been abolished, it is contended, as we understand the plaintiff's argument, that at common law the Morrisdale Coal Company had a right of action against the Pennsylvania Railroad Company for damages sustained by the former company by reason of the enforcement against it of the old rule, and that the effect of the act to regulate commerce was merely to suspend that right while the rule was operative. Consequently, it is argued, the common-law right of action was revived on January 1, 1906, when the new rule was substituted for the old one. For present purposes, we deem it unnecessary to consider what right at common law, if any, the coal company may have had in the absence of the act to regulate commerce. While section 22 of the act has a clause which declares that "nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies," it was held in the Abilene Case that that section could not "in reason be construed as continuing in shippers a common-law right the continued existence of which would be absolutely inconsistent with the provisions of the act." What was really done by the Pennsylvania Railroad Company on January 1, 1906, was to change or modify its rule for the distribution of cars. If a common carrier can defeat the power of the Interstate Commerce Commission to inquire into the reasonableness of its rates or regulations by voluntarily changing or modifying them, frequent changes or modifications would very seriously impair the efficiency of the commission and the purposes of the act. It is clear that Congress intended by the legislation embodied in the act to regulate commerce, and the amendments thereof passed prior to January 1, 1906, to confer upon the Interstate Commerce Commission very large powers in investigating the accounts and regulations of common carriers subject to the provisions of the act, and in requiring obedience to those provisions. So plenary is the administrative power of the commission that in the Abilene Case it was said that:

"Although an established schedule of rates may have been altered by a carrier voluntarily, or as the result of the enforcement of an order of the commission to desist from violating the law, rendered in accordance with the provisions of the statute, it may not be doubted that the power of the commission would nevertheless extend to hearing legal complaints of and award-

ing reparation to individuals for wrongs unlawfully suffered from the application of the unreasonable schedule during the period when such schedule was in force."

It does not follow from what has been said. that the commission was bound, under the statute as it existed prior to 1906, to investigate every claim for damages against a common carrier founded on a violation of the statute by the enforcement of a rule not in existence when the complaint was made. Section 16 of the act, as amended June 29, 1906, declares that:

"All complaints for the recovery of damages shall be filed with the commission within two years from the time the cause of action accrues, and not after, and a petition for the enforcement of an order for the payment of money shall be filed in the Circuit Court within one year from the date of the order; provided, that claims accrued prior to the passage of this act may be presented within one year." Act Feb. 4, 1887, c. 104, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165) as amended by Act June 29, 1906, c. 3591, § 5 (U. S. Comp. St. Supp. 1909, p. 1159).

Although previous to 1906 there was in the act no express limitation of time within which a proceeding before the commission should be commenced, before the amendment as well as after it a claim for damages might have been barred by lapse of time. An order by the commission to pay damages was but a recommendation. Payment could have been enforced only by an action in some court. As the court would regard the statute of limitations, the commission would do so. Such evidently was the view of the commission as to claims accrued before the amendments of 1906. Cattle Raisers' Association v. C., B. & Q. R. Co., 10 Interst. Com. R. 83; Missouri & Kansas Shippers' Association v. A., T. & S. F. Ry. Co., 13 Interst. Com. R. 411. The object of the limitation above quoted was to shorten the period within which claims for damages might be filed, saving, however, to any claimant whose claim had accrued more than two years before the amendment took effect a year within which to present his claim. "The intent of the proviso (in the amendment) is, in our opinion," said the commission in Nicols, Stone & Myers Co. v. L. & N. R. R. Co., 14 Interst. Com. R. 199, 206, "to prevent such a construction of the preceding part of this provision as to cut off claims upon previously accrued causes of action as to which the two years had already run, or so nearly so that it would be impracticable for the claimants to present their claims within such period."

We conclude, therefore, that if, except for the act to regulate commerce, the Morrisdale Coal Company would have had a common-law right of action against the Pennsylvania Railroad Company for the damages here claimed, that right was not merely suspended while the old rule of distribution was in operation, but was taken away for all time and the coal company given a substituted right of procedure before the commission, at any time within one year after June 29, 1906, for a determination by the commission of the question whether the rule complained of was discriminatory, unless, indeed, the commission has no power, under the act, to determine whether a rule for the distribution of cars is discriminatory.

In considering what power, if any, the commission has over rules for the distribution of cars, it is to be observed that section 3 of the act declares it to be unlawful for any common carrier to subject any party to any undue or unreasonable prejudice or disadvantage in any respect whatsoever; that section 12 authorizes and requires the commission to execute and enforce the provisions of the act; that section 13 imposes on the commission the duty of investigating complaints concerning anything done or omitted to be done by any common carrier subject to the provisions of the act; that section 14 requires the commission to make a report in writing of each of its investigations and to embody therein its decision, order, or requirement, and, in case damages are awarded, the findings of fact on which the award is made; that section 15 authorizes and empowers the commission to investigate alleged unreasonable rate charges, and alleged unreasonable or discriminatory regulations or practices, and to prescribe what shall be just, fair, and reasonable; that section 16 provides that the commission, where upon a complaint filed under section 13 it has determined that the complainant is entitled to an award of damages, shall make an order "directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named"; that, if payment shall not be made within the time limit of the order, the complainant may commence an action in a Circuit Court of the United States for the recovery of his damages; and that on the trial the order of the commission "shall be prima facie evidence of the facts therein stated," and that section 10 of the amendment of March 2, 1889 (Act March 2, 1889, c. 382, 25 Stat. 862 [U. S. Comp. St. 1901, p. 3172]), authorizes Circuit and District Courts of the United States to issue writs of mandamus against common carriers in certain cases of violation of the act. Unless these provisions are to be restricted by construction, they seem to require the commission, not only to determine what are just and reasonable rate schedules, but, also, what are just and reasonable regulations and practices, and to ascertain and award damages, where they have been sustained, in every case in which it finds that an unjust rate schedule or an unjust regulation or practice has been in operation.

In Baltimore & Ohio R. R. Co. v. Pitcairn Coal Co., 215 U. S. 481 30 Sup. Ct. 164, 54 L. Ed. 292, a case in which the Pitcairn Coal Company applied in the first instance to the United States Circuit Court for the District of Maryland, after the amendments of 1906 had gone into effect, for a mandamus to compel the Baltimore & Ohio Railroad Company to alter its rule for the distribution of cars, Mr. Justice White, after referring to the Abilene Case, said:

"The ruling there made dealt with the provisions of the act as they existed prior to the amendments adopted in 1906, and when those amendments are considered they render, if possible, more imperative the construction given to the act by that ruling, since, by section 15, as enacted by the amendment of June 29, 1906, the commission is empowered, indeed, it is made its duty, in disposing of a complaint, not only to determine the legality of the practice alleged to give rise to an unjust preference or undue discrimination, and to forbid the same, but, moreover, to direct the practice to be followed as to such subject for a future period, not exceeding two years, with power in the commission, if it finds reason so to do, to suspend, modify, or set aside the same, the order, however, to become operative without judicial action."

And in construing section 23 (section 10 of the amendment of March 2, 1889, concerning the power of courts to issue writs of mandamus) with the other provisions of the act it was said:

"It being demonstrable, as we have seen, that to give to section 23 the broad meaning which the court below affixed to it would be to destroy or render inefficacious the remedial purposes of the amendments enacted in 1906, it must follow that such construction cannot be adopted, since to do so would compel us to hold that the wide and far-reaching remedies created by the amendments of 1906 were, in effect, destroyed by the narrower remedial processes which had been previously enacted in 1889. This conclusion being in reason impossible, it must follow that, construing the provisions of section 23 in the light of and in harmony with the amendments adopted in 1906, the remedy afforded by that section in the cases which it embraces must be limited either to the performance of duties which are so plain and so independent of previous administrative action of the Commission as not to require a prerequisite exertion of power by that body, or to compelling the performance of duties which plainly arise from the obligatory force which the statute attaches to orders of the commission, rendered within the lawful scope of its authority, until such orders are set aside by the Commission or enjoined by the courts."

Accordingly it was decided that the Circuit Court did not have original jurisdiction to determine the legality of the rule of the Baltimore & Ohio Railroad Company for the distribution of coal cars, and the petition for a writ of mandamus was ordered to be dismissed.

In Interstate Commerce Commission v. Illinois Central R. R. Co., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280, the complaint was also against an alleged discriminatory rule for the distribution of coal cars. There application for redress was originally made to the commission. It made an order requiring a change in the rule. Subsequently the United States Circuit Court decreed an injunction against the enforcement of certain provisions of the commission's order. In the Supreme Court it was contended that while section 15 of the act, as amended in 1906, confers upon the commission authority upon complaint duly made to declare a rate or practice affecting rates illegal and to establish a new and reasonable rule or practice affecting such rates for a term not exceeding two years, it has no relation to complaints concerning preferences or discriminations that do not affect rates. In other words, the contention was that the commission had no authority to make an order requiring a change in the rule for the distribution of cars because such a rule does not affect rates. But it was declared that such a construction would frustrate the very purpose of the act. "The antecedent construction which the interstate commerce act had necessitated," said the court, referring evidently to the Abilene Case, "and the remedial character of the amendments adopted in 1906, all serve to establish the want of merit in the contention relied upon. In addition, to adopt it would require us to hold that Congress in enlarging the powers of the commission over rates had so drafted the amendment as to cripple and paralyze its power in correcting abuses as to preferences and discriminations which, as this court has hitherto pointed out, it was the great and fundamental purpose of Congress to further." Accordingly the decree for injunction was reversed.

These cases conclusively establish the doctrine that the Interstate Commerce Commission alone has original jurisdiction to determine whether an existing rate schedule, or an existing regulation or practice

affecting rates, or an existing regulation or practice of any other kind affecting matters sought to be regulated by the act, is unjust or unreasonable, or unjustly discriminatory, or unduly preferential or prejudicial, and that the courts cannot, by mandamus, injunction, or otherwise, control or modify any order of the commission made by it in the due performance of its merely administrative functions. Of course, there may be cases involving constitutional or legal rights in which judicial questions for the determination of the courts may be presented. It is also the established doctrine that, where the subject-matter of the complaint is an alleged unreasonable or prejudicial rate charge, the commission has the power, after determining that the charge was excessive, to award damages to the complainant. In such case the award would probably be a mere matter of calculation, and would be a sum equal to the difference between the charge found to be reasonable and the charge actually made by the carrier. In a case where the alleged discriminatory rule has relation to the distribution of coal cars, it is obvious that, if the commission sustains the complaint and prescribes what shall thereafter be a reasonable rule of distribution, an award of damages to the complainant for injuries sustained under the operation of the discriminatory rule cannot be a mere matter of calculation. It has therefore been held by a majority of the commission in Hillsdale Coal & Coke Co. v. Pennsylvania R. R. Co., decided March 7, 1910, that it has no authority or power to assess and determine the measure of damages in such a case as the one now before us. The view of the majority of the commission was that the only damages it may assess are rate damages, or damages that can be measured by the difference in the rate actually charged and the rate which, for any reason under the act, ought to be charged. The same view had been previously expressed by a majority of the commission in Joynes v. Pennsylvania R. R. Co., 17 Interst. Com. R. 361. "As to whether we may go beyond the transportation question, the alleged discriminatory rules and practices," said the majority through Mr. Commissioner Harlan, "and enter upon an inquiry as to the amount of the damage that may have been suffered by the complainant, the commission is divided, as in the case to which we have just alluded (the Joynes Case). The majority is still of the opinion that it is not for us under the law to assess and determine the measure of the damages thus sustained by the complainant; that being a judicial question for the courts." Inasmuch, however, as the case now before this court had been decided by the Circuit Court before the Hillsdale Coal & Coke Company's Case was decided by the commission, it concluded to hear argument on the question of damages to the end that, if the commission should award damages, the question of its power so to do might ultimately come before the courts for their consideration.

As already suggested, the letter of the statute seems to confer upon the commission the power to assess damages in every case of discriminatory practices. Its procedure in making the assessment constitutes no part of a judicial proceeding. In a court of law its findings and order are but prima facie evidence of the damages sustained. We do not find it necessary, however, to decide at present the question on which the members of the commission are divided. If judicial action shall be taken in the Hillsdale Coal & Coke Company's Case, the court

whose jurisdiction will be invoked will doubtless be the court from which our present case has come. We have not had the benefit of any argument on the question. It is not even suggested in the record or briefs of this case. For the present, it is sufficient for us to say that in our opinion a party claiming to be injured by a discriminatory rule for the distribution of coal cars cannot maintain in a court of law an action for the recovery of damages before the Interstate Commerce Commission has investigated the case and determined by its report that the rule is or was discriminatory. The determination of that question, at least, involves only the performance of administrative functions which, under the act, are to be performed by the commission, and not by any court. Whether after the commission has found such a rule to be discriminatory it is its duty to proceed to assess the damages, if any, which the complaining party has sustained, or whether they are to be recovered by an action in some court without any preliminary assessment by the commission, is a question which, since it has not been argued before us and since its decision is not necessary to the disposition of the case we now have in hand, we should not at present decide.

For the reasons stated, the judgment of the Circuit Court will be affirmed, with costs.

## Supplemental Opinion.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

LANNING, Circuit Judge. After the foregoing opinion had been prepared, but before it was filed, the defendant in error presented its petition for the dismissal of the writ of error on the ground that, under the provisions of sections 5 and 6 of the act establishing circuit courts of appeals (Act March 3, 1891, c. 517, 26 Stat. 827, 828 [U. S. Comp. St. 1901, p. 549]), we have no appellate jurisdiction of this case. The provisions referred to are:

"Sec. 5. That appeals or writs of error may be taken from the District Courts or from the existing Circuit Courts direct to the Supreme Court in the following cases: (1) In any case in which the jurisdiction of the court is in issue; in such cases the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision. * * *

"Sec. 6. That the Circuit Court of Appeals established by this act shall exercise appellate jurisdiction to review by appeal or by writ of error final decisions in the District Courts and the existing Circuit Courts in all cases other than those provided for in the preceding section of this act, unless otherwise provided by law."

To the plaintiff's statement or declaration in the court below the defendant filed the pleas of the general issue and the statute of limitations. The case went to trial on the merits before the court and a jury, and a special verdict was taken in the following form:

"We find as a fact that the amount of the plaintiff's claim is correct and is contained in its Exhibit 2, and is

| | |
|---|---|
| Principal | $51,640.60 |
| Int. | 15,515.49 |
| Total | $67,156.09 |

"Said amount being ascertained in the way and manner in said exhibit set forth, together with the evidence explaining and referring to the same.

"If the court shall be of opinion that the questions of law involved in the case are in whole or in part with the plaintiff, judgment may be entered for the above amount or for such smaller sum as in the opinion of the court the plaintiff may be entitled to recover.

"If, however, the court be of opinion that the questions of law are with the defendant, then we find in favor of the defendant."

Concerning the requests to charge, the court said:

"The points of the plaintiff and defendant, respectively, are not answered specifically, and to such failure to answer the points specifically an exception is sealed both to plaintiff and defendant."

In none of the defendant's points was the question of the jurisdiction of the Circuit Court raised. Some time after the rendition of the verdict, and before judgment had been entered, the defendant moved that the Circuit Court dismiss the action for want of jurisdiction. That motion having been argued, and the Circuit Court having concluded that it should be granted, final judgment was entered "in favor of defendant and against the plaintiff in accordance with the opinion of the court." This judgment, which we will assume is one dismissing the action for want of jurisdiction, having been brought to this court by the writ of error which we are now asked to dismiss, the case was argued here on the assignments of error filed by the plaintiff without a suggestion from the defendant that we had no appellate jurisdiction of the case.

We think the following rules may be deduced from the adjudicated cases:

1. If a case in a District or Circuit Court is dismissed by final judgment or decree, either for want of jurisdiction of the parties or for want of power as a federal court to take jurisdiction of the subject-matter, without the decision of any other question, so that the only question presented by the record is such question of jurisdiction, the judgment or decree can be reviewed by the Supreme Court only, on appeal or writ of error, with a certificate from the lower court of the question of jurisdiction.

In support of the rule as thus stated, we refer to: Davis & Rankin Bldg. & Mfg. Co. v. Barber, 60 Fed. 465, 9 C. C. A. 79, where defendants demurred to plaintiff's declaration on the ground that the liability of the defendants upon the contract sued on was several and not joint, and that, being so construed, the claim against each defendant was less than the minimum sum necessary to give the court jurisdiction of the subject-matter of the action, and where, the court sustaining that view and dismissing the action for want of jurisdiction, the Circuit Court of Appeals of the Seventh Circuit, concluding that the case should have been taken directly to the Supreme Court, dismissed its writ of error for want of appellate jurisdiction. Cabot v. McMaster, 65 Fed. 533, 13 C. C. A. 39, where the action went to trial before the Circuit Court without a jury, and that court, without deciding the merits of the controversy, dismissed the action because the amount in controversy was less than the minimum sum necessary to give jurisdiction to the court, and where the Circuit

Court of Appeals of the Seventh Circuit dismissed the writ of error sued out of that court for want of appellate jurisdiction. Chappel v. United States, 160 U. S. 499, 16 Sup. Ct. 397, 40 L. Ed. 510, where the writ of error from the Supreme Court to a District Court was general, and not limited to any definite question of jurisdiction, and brought up the whole case, including a question concerning the constitutionality of a law of the United States, and where the Supreme Court, while retaining appellate jurisdiction because under the provision of subdivision 5 of section 5 of the act establishing Circuit Courts of Appeals that court has such jurisdiction in any case in which the constitutionality of a law of the United States is drawn in question, said that, in order to bring a case within subdivision 1 of section 5 of the act, not only must it appear of record that a question of jurisdiction was involved in the decision below, but that question, and that alone, must be certified to the Supreme Court. Shepard v. Adams, 168 U. S. 618, 18 Sup. Ct. 214, 42 L. Ed. 602, where defendant moved to set aside the service of a summons upon him, and where, the District Court overruling his motion and entering final judgment against him because he chose to stand on his motion and not to plead, the Supreme Court refused to dismiss the writ of error, which had issued from it directly to the District Court, and disposed of the case on the error assigned. Evans-Snider-Buel Co. v. M'Caskill, 101 Fed. 658, 41 C. C. A. 577, where a plea to the jurisdiction of the Circuit Court was filed setting up that the defendant was not a resident of the district in which he was sued, the plea sustained and the action dismissed, and where the writ of error from the Circuit Court of Appeals of the Eighth Circuit was dismissed for want of appellate jurisdiction. Excelsior Wooden-Pipe Co. v. Pacific Bridge Co., 109 Fed. 497, 48 C. C. A. 349, where, after issue had been joined on a bill to restrain infringement of certain letters patent, and after the defendants had applied to the Circuit Court for an order extending the time for the completion of their proofs, and the complainant had moved for a decree on the pleadings and papers filed in the case, the court called for argument on the question of its jurisdiction of the controversy, and subsequently, without deciding either of the motions previously made, dismissed the case for want of jurisdiction, on the ground that the case was one arising on contract, and not under the patent laws of the United States, and was not a case in which there was a diversity of citizenship, and where the Circuit Court of Appeals of the Ninth Circuit dismissed the appeal to that court because error could not be assigned on the Circuit Court's refusal to extend the defendants' time for completing their proofs, nor on its refusal to enter a decree upon the pleadings, and because upon the record the question of the jurisdiction of the Circuit Court only was in issue—a decision concurred in by the Supreme Court, which subsequently, in 185 U. S. 282, 22 Sup. Ct. 681, 46 L. Ed. 910, entertained an appeal and reversed the Circuit Court. Hays v. Richardson, 121 Fed. 536, 57 C. C. A. 598, where the dismissal was on the ground that the attachment of the defendant's property, by which the action was initiated, was illegal, and where, no other question being tried or decided in the court below, the writ of

error from the Circuit Court of Appeals of the Ninth Circuit was dismissed for want of appellate jurisdiction. The Steamship Jefferson, 215 U. S. 130, 30 Sup. Ct. 54, 54 L. Ed. 125, where a District Court dismissed a libel for salvage services on the ground that there can be no lien for services in extinguishing a fire on a vessel while in a dry dock, and therefore because the District Court, as a court of admiralty, had no jurisdiction of the case, and where the Supreme Court on an appeal taken directly to it held that, as the question of the jurisdiction of the District Court as a federal court was the only question decided by it, the direct appeal to the Supreme Court was proper. The Alliance, 70 Fed. 273, 17 C. C. A. 124, where a District Court dismissed a libel in admiralty for want of jurisdiction without the decision of any other question, and where the Circuit Court of Appeals of the Ninth Circuit dismissed the appeal taken to that court on the ground that it should have been taken to the Supreme Court. St. Louis Cotton Compress Co. v. American Cotton Co., 125 Fed. 196, 60 C. C. A. 80, where the Circuit Court dismissed the action because of invalid service of a summons upon the defendant and consequent want of jurisdiction of the defendant, and where the Circuit Court of Appeals of the Eighth Circuit dismissed the writ of error from that court on the ground that the Supreme Court had exclusive appellate jurisdiction of the case. Board of Trade v. Hammond Elevator Co., 198 U. S. 424, 25 Sup. Ct. 740, 49 L. Ed. 1031, where the Circuit Court dismissed a bill because of want of jurisdiction of the defendant by reason of invalid service of the subpœna ad respondendum, and where the Supreme Court, on an appeal direct to it, retained appellate jurisdiction. Davis v. C., C. C. & St. L. Ry., 217 U. S. 157, 30 Sup. Ct. 463, 54 L. Ed. 708, 27 L. R. A. (N. S.) 823, where the Circuit Court dismissed the action on defendant's objection that the attachment of its property was illegal, and that the court had therefore not acquired jurisdiction of the person or the property of the defendant, and where the Supreme Court refused to dismiss the writ of error which took the cause, with a certificate of the question of jurisdiction only, directly to that court, it saying that it concurred with the views of the Circuit Court of Appeals of the Eighth Circuit when, in dismissing the writ of error from that court in the same case, it declared that the case was not distinguishable in respect of its essential characteristics from one where there has been an illegal service of summons upon a defendant. Lehigh Valley Railroad Company v. Cornell Steamboat Company, Claimant of Steam Tug Ira M. Hedges (decided by the Supreme Court on November 7, 1910) 218 U. S. 264, 31 Sup. Ct. 17, 54 L. Ed. 1039, where a libel in admiralty was brought to enforce contribution for the damages resulting from a collision of vessels which the libelant, by reason of a common-law judgment against it, had been compelled to pay, where exceptions to the libel were filed, and the libel dismissed on the ground that the District Court, as a court of admiralty, had no jurisdiction to enforce such a contribution, where an appeal was taken directly to the Supreme Court, and where that court asserted its jurisdiction of the appeal.

2. If a case in a District or Circuit Court goes to trial or hearing on a question of jurisdiction and on the merits, and the question of jurisdiction is one concerning either the jurisdiction of the parties or the power of the court as a federal court to take jurisdiction of the subject-matter, the party dissatisfied with the final judgment or decree, whether he be plaintiff or defendant, may waive all errors on the merits, and take the case directly to the Supreme Court, on appeal or error, with a certificate from the lower court of the question of jurisdiction; or he may assign errors on the merits and on the question of jurisdiction, and take the whole case, on appeal or error, to the proper Circuit Court of Appeals. In the latter proceeding the Circuit Court of Appeals may certify the question of jurisdiction to the Supreme Court, and defer decision upon the other questions until the answer of the Supreme Court shall have been received.

In support of the rule as thus stated we refer to: McLish v. Roff, 141 U. S. 662, 12 Sup. Ct. 118, 35 L. Ed. 893, where the defendant filed a demurrer to the jurisdiction of the court below on the ground that, as it appeared by the complaint that the plaintiff and defendant were both citizens of the Chickasaw Tribe of Indians, the court had no jurisdiction of the parties, and also on the ground that the courts of that tribe had exclusive jurisdiction, where the court overruled the demurrer and required the defendant to proceed with the trial of the cause upon the merits, and where the Supreme Court, while dismissing the writ of error sued out of that court directly to the trial court on the ground that it was sued out before the entry of final judgment, said, however, that:

"When that judgment is rendered, the party against whom it is rendered must elect whether he will take his writ of error or appeal to the Supreme Court upon the question of jurisdiction alone, or to the Circuit Court of Appeals upon the whole case."

United States v. Jahn, 155 U. S. 109, 15 Sup. Ct. 39, 39 L. Ed. 87, where the board of general appraisers imposed a gauging charge on imported molasses, where the Circuit Court reversed the board on the ground that such charge had been abolished, where on a writ of error from the Circuit Court of Appeals to the Circuit Court the United States assigned for error that the decision of the Board of General Appraisers was final and conclusive, and that the Circuit Court had no jurisdiction, and also assigned errors on the merits, and where the Supreme Court, after answering in the affirmative the question whether the Circuit Court had jurisdiction to hear and determine the points of law and fact involved in the decision of the Board of General Appraisers, which had been certified to the Supreme Court by the Circuit Court of Appeals, left the latter court to exercise appellate jurisdiction on the merits of the case. Crabtree v. Madden, 54 Fed. 426, 4 C. C. A. 408, where the complaint was demurred to because it did not state a cause of action, because the court had no jurisdiction of the parties, and because the plaintiff had no legal capacity to sue, where the demurrer was sustained and the action dismissed, where the writ of error brought up to the Circuit Court of Appeals the whole case, including the question whether the complaint stated a cause of action,

where, on a motion to dismiss the writ of error on the ground that the only question presented by the record was the question of jurisdiction of the court below and that the jurisdiction of the Supreme Court to review that question was exclusive, the Circuit Court of Appeals said that the writ of error brought up the whole case, and that, if it should be of the opinion that the court below had jurisdiction of the subject-matter and the parties, there would remain for its determination the question whether the complaint stated facts sufficient to constitute a cause of action, and where, accordingly, it refused to dismiss the writ, but proceeded to consider the case, and affirmed the lower court because that court had no jurisdiction. Wirgman v. Persons, 126 Fed. 454, 62 C. C. A. 63, where the decree in favor of the complainants was appealed by the defendants, and errors were assigned on the question of jurisdiction and on the merits, and where the Circuit Court of Appeals of the Fourth Circuit asserted its appellate jurisdiction, notwithstanding counsel on both sides stipulated, before the argument in the Circuit Court of Appeals was commenced, to confine themselves to the question of jurisdiction.

3. If a case in a District or Circuit Court is dismissed by final judgment or decree for want of jurisdiction, either after a hearing on a question of jurisdiction only or after a hearing or a trial on a question of jurisdiction and the merits, and the question of jurisdiction is not one concerning jurisdiction of the parties or concerning the power of the court as a federal court to take jurisdiction of the subject-matter of the action, but is a question of jurisdiction relating to the general authority of the court as a judicial tribunal, the party dissatisfied with the judgment or decree, whether he be plaintiff or defendant, may have the judgment or decree reviewed, on appeal or error, by the proper Circuit Court of Appeals only.

In support of this rule we refer to: Smith v. McKay, 161 U. S. 355, 16 Sup. Ct. 490, 40 L. Ed. 731, where the defendants filed an answer to the complainant's bill, averring, amongst other things, that the complainant had a plain, adequate, and complete remedy at law, which objection was overruled, where the case was heard on pleadings and proofs and final decree rendered against the defendants, where appeal was taken directly to the Supreme Court, and error assigned on the refusal of the Circuit Court to dismiss the suit for want of jurisdiction, and where the Supreme Court dismissed the appeal on the ground that the objection was not the want of power in the Circuit Court to entertain the suit, but the want of equity in the complainant's bill. Blythe v. Hinckley, 173 U. S. 501, 19 Sup. Ct. 497, 43 L. Ed. 783, where one of the grounds for dismissing the bill of the complainant was that the complainant's remedy was at law, and not in equity, and therefore not a decision that the Circuit Court had no jurisdiction as a court of the United States, and where the Supreme Court for that reason, and for another which did not involve the jurisdiction of the Circuit Court as a federal court, dismissed the appeal that had been taken directly to the Supreme Court. Louisville Trust Co. v. Knott, 191 U. S. 225, 24 Sup. Ct. 119, 48 L. Ed. 159, where a Circuit Court refused to order its receiver to surrender his possession of certain property to a receiver appointed by a state court, the single question

being which of the two courts had acquired prior jurisdiction, and where the Supreme Court dismissed the appeal taken to that court on the ground that the case presented no question involving the jurisdiction of the Circuit Court as a federal tribunal, but simply its general authority as a judicial tribunal to proceed in harmony with established rules of practice governing courts of concurrent jurisdiction as between each other. Bache v. Hunt, 193 U. S. 523, 24 Sup. Ct. 547, 48 L. Ed. 774, where on an intervening petition filed by Hunt in a foreclosure suit in which Bache was a defendant Bache filed a plea to the jurisdiction of the court over the subject-matter of the petition and of his person, where the Circuit Court overruled the plea and rendered a decree against Bache, and where the Supreme Court dismissed the appeal taken directly to that court, saying that the jurisdiction of the Circuit Court was only questioned in respect of its general authority as a judicial tribunal, and not in respect of its power as a court of the United States, and that the established rules of practice as to bringing in parties to ancillary or pro interesse suo proceedings, and those governing courts of concurrent jurisdiction as between themselves, were alone involved. United States v. Larkin, 208 U. S. 333, 28 Sup. Ct. 417, 52 L. Ed. 517, where a District Court dismissed the information filed for the forfeiture of certain jewels on Larkins' plea to the jurisdiction of the court that the jewels had been wrongfully taken by an agent of the government into the district where the information was filed, and where the Supreme Court dismissed the writ of error which had issued out of that court directly to the District Court on the ground that the question involved was not the jurisdiction of the United States courts as such, but whether the District Court in which the information was filed, or the District Court in which the jewels were first found, had jurisdiction.

The first of these rules applies to a case where the lower court decides nothing but a question of jurisdiction. That question may be one concerning jurisdiction of the parties (as where no valid service of a summons upon a defendant is made, or where the initial step in an action is an illegal attachment of the defendant's property), or it may be one concerning the power of the lower court, as a federal court, to take jurisdiction of the subject-matter of the action (as where there is no proper diversity of citizenship of the parties, or where the matter in dispute does not exceed in value the sum of $2,000, or where there is a question as to whether a claim may be enforced in a court of admiralty).

The second rule applies to a case where there has been a decision in the lower court on the merits and also on a question concerning that court's jurisdiction of the parties, or concerning its power to take jurisdiction of the subject-matter of the action.

The third rule applies to a case where the lower court has decided a question of jurisdiction, either with or without deciding the merits; such question of jurisdiction being one concerning its general authority as a judicial tribunal, and not a question concerning jurisdiction of parties or of subject-matter, as, for example, whether a remedy should be sought at law or in equity, or which of two courts having concur-

rent jurisdiction first acquired jurisdiction, or which of two federal courts of equal rank, but in different localities, has jurisdiction.

The case now in hand went to trial on the merits. The jury passed upon the merits by rendering a special verdict awarding damages for the plaintiff against the defendant, if the court should be of the opinion that the law was with the plaintiff, and, if it should be of the opinion that the law was with the defendant, then giving its verdict to the defendant. The Circuit Court concluded that the Interstate Commerce Commission had original jurisdiction in the case, and therefore it refused to enter judgment for the plaintiff on the special verdict, and entered judgment dismissing the action for want of jurisdiction. The question of jurisdiction was one concerning the jurisdiction of the Circuit Court as a federal court. Errors were assigned on the question of jurisdiction and also on the merits. The errors assigned were that the Circuit Court erred (1) in dismissing the action for want of jurisdiction; (2) in dismissing the action for want of jurisdiction and entering judgment in favor of defendant; (3) in not entering judgment in favor of the plaintiff for the sum of $67,156.09; (4) in not affirming the plaintiff's first point by charging the jury as to the duty of the Pennsylvania Railroad Company concerning the distribution of cars; and (5) in not affirming the plaintiff's second point by charging the jury as to the method of ascertaining the damages sustained by the plaintiff. In the argument in this court on the errors assigned counsel for the plaintiff contended that the Circuit Court had jurisdiction of the case, that the defendant's rule for the distribution of cars illegally discriminated against the plaintiff, and that the damages sustained by the plaintiff were the full amount named in the special verdict. The defendant, on the other hand, contended that the Circuit Court did not have jurisdiction of the case; that, if it did, still the plaintiff offered no evidence from which a jury could find that it did not receive all the cars it would have been entitled to under such a rule as that for which it contended; that the defendant's rule for the distribution of cars was not illegally discriminatory; and that the method by which the damages were estimated by the jury was erroneous. Both parties argued at length both the question of jurisdiction and the questions concerning the merits. This they properly did, because those questions were presented by the assignments of error. Had we concluded that the Circuit Court erred in dismissing the action for want of jurisdiction, it would have been our duty, not only to reverse the judgment of the Circuit Court, but to decide whether the plaintiff was entitled to judgment on the special verdict. The case comes therefore within the provisions of the second rule above given. The defendant had the right to assign errors on the merits and on the question of jurisdiction, and to bring the whole case to this court. This it did. Consequently the case is properly here and the motion to dismiss the writ of error must be denied.

BUFFINGTON, J. (dissenting). As this court's own jurisdiction over this case is here involved, and I firmly believe it has no jurisdiction, I deem it my duty to record my dissent. In the court below the Morrisdale Coal Company brought suit against the Pennsylvania Rail-

183 F.—60

road. The railroad was an interstate carrier, and the plaintiff coal company required cars for interstate coal shipments. The Pennsylvania Railroad furnished coal cars to different coal regions, over its system, one of which was the Clearfield region, in which plaintiff's mines were located. Plaintiff alleges the railroad "failed and refused to assign to the Clearfield coal region for use therein the fair proportion of the entire number of coal cars of said railroad company to which said region was entitled." That raised the question of the regulation of car division between different coal regions of the Pennsylvania Railroad system. The daily production capacity of the Clearfield region was rated at 18,000 to 19,000 tons of coal, and the statement alleged the railroad failed to furnish on demand "the plaintiff's due proportion or daily allotment of cars which were or should have been assigned to shippers in the said Clearfield coal region for the transportation of coal." The plaintiff therefore alleged that by the failure on the part of the defendant to give the plaintiff its proper allotment of cars during the period aforesaid, undue and unreasonable preferences and advantages were given to the other mines and collieries in the said Clearfield coal region, and to shippers in other coal regions, over the plaintiff, in that said mines and collieries were thereby accommodated with car supply and facilities for the shipment of coal greater than those which should be properly allotted to them when compared with the facilities allotted to the plaintiff. The case proceeded to trial, and on November 17, 1909, a special verdict for the plaintiff was found, subject to the court's determination of the law. On November 29th the plaintiff moved for entry of judgment on this verdict. Pending this motion, which was never disposed of, the defendant moved the court on January 31, 1910, to dismiss the action for want of jurisdiction; its motion being as follows:

"And now, this 31st day of January, 1910, the defendant moves the court to dismiss this action for want of jurisdiction to entertain the same."

This motion to dismiss the court below in an opinion reported at 176 Fed. 748, and in which the question of jurisdiction alone was discussed, held the suit involved the proper car regulation and car distribution of the railroad, that this was an administrative question for the Interstate Commerce Commission, and the Circuit Court was without jurisdiction. Its opinion, which, as we have said, neither discussed nor disposed of the merits of the case or the plaintiff's motion for judgment, concluded with the statement:

"The defendant's motion to dismiss the suit for want of jurisdiction must be granted."

Thereafter the defendant filed a præcipe as follows:

"Enter judgment in the above case in favor of the defendant and against the plaintiff in accordance with the opinion of the court filed."

And in pursuance thereof judgment was entered as follows:

"And now, this tenth day of February, 1910, in accordance with præcipe filed, judgment is hereby entered in the above-entitled case in favor of the defendant and against the plaintiff in accordance with the opinion of the court."

On motion of plaintiff's counsel, the court allowed the plaintiff the only exception asked for, viz.:

"Exception to the action of the court in granting defendant's motion to dismiss this suit for want of jurisdiction."

It will thus be seen that the court heard, decided, and decreed no question save that of jurisdiction, and was in a position to certify that the only question in the case was one of jurisdiction. Under such facts to what court did a writ lie to review such jurisdictional judgment. If plain words can point out plain paths, section 5 of the act of March 3, 1891, makes the Supreme Court in such case the sole reviewing tribunal, for it provides:

"That appeals or writs of error may be taken from the district court or from the existing Circuit Courts direct to the Supreme Court in the following cases; (1) In any case in which the jurisdiction of the court is in issue: in such case the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision."

Now the case in hand falls literally within this provision; the jurisdiction of the court below was in issue; it was challenged by a motion to dismiss for want of jurisdiction; that issue was decided; a judgment was entered dismissing the case for want of jurisdiction, and exception was taken to the judgment dismissing for want of jurisdiction. United States v. Jahn, 155 U. S. 112, 15 Sup. Ct. 39, 39 L. Ed. 87, was a case where, as here, jurisdiction was in issue, and the decision was against jurisdiction. The case went direct to the Supreme Court and was said by that court in speaking of its jurisdiction to review under section 5:

"If in such a case a final judgment were rendered because of want of jurisdiction, that judgment could be reviewed by this court upon a certificate of the circuit court, while if the jurisdiction were sustained and the merits adjudicated, although the question of jurisdiction might be brought up directly, the Circuit Court of Appeals would undoubtedly have jurisdiction to review the case upon the merits."

The extract quoted above covers exactly the case in hand. The court below entered judgment for the want of jurisdiction, and therefore the writ lay direct to the Supreme Court. Had the Circuit Court sustained jurisdiction and passed on the merits, the defendant would have had alternative remedies, but that state of facts never arose, hence the writ lay to the Supreme Court and that court alone. The authority of United States v. Jahn has not been questioned or qualified in any subsequent case. It is true, as stated by Judge Sanborn in St. Louis Co. v. American Co., 125 Fed. 199, 60 C. C. A. 83, there are expressions in some later opinions of the Supreme Court that the jurisdiction by section 5, supra, is "the jurisdiction of the Circuit and District Courts as such (Mexican Central Ry. Co. v. Echman, 187 U. S. 432, 23 Sup. Ct. 212, 47 L. Ed. 245), and that 'appeals or writs of error may be taken directly from the circuit court to this court in cases in which the jurisdiction of those courts is in issue—that is, their jurisdiction as federal courts—the question

alone of jurisdiction being certified to this court' (Blythe v. Hinckley, 173 U. S. 501, 19 Sup. Ct. 497, 43 L. Ed. 783)," but as he well says:

"* * * These statements have never been crystallized into a settled proposition of law, and they have never formed the basis of any decision. * * * That section does not limit the question of which it treats to those which condition the jurisdiction of the federal courts as such as distinguished from those which condition the jurisdiction of all courts. It is broad and general in its terms. It contains no exception, and, as the congress made no exception, the legal presumption is that it intended to make none, and it is not the province of the courts to enact one. * * * Where the complainants failed in the Circuit Court and the Supreme Court refused to review their failure, they failed not for want of jurisdiction in the trial court, but for want of equity, for want of facts constituting causes of action, for want of merits in their cases. * * * Our conclusion is that the Supreme Court has jurisdiction under section 5 of the act creating the Circuit Courts of Appeals to review by writs of error or appeals taken directly to that court from the United States Circuit Court every question which involves the jurisdiction of the latter court, whether that question is peculiar to the federal courts as such or common to all courts. * * * The result is that this writ of error was sued out to review a judgment of a Circuit Court which sustained an objection to its jurisdiction and dismissed the action on that ground, that the Supreme Court had jurisdiction to review that judgment by writ of error direct to the Circuit Court, and therefore this court has no such jurisdiction."

This decision was cited and followed in the Eighth Circuit and a writ of error dismissed in Davis v. Cleveland Co., 156 Fed. 775, 84 C. C. A. 453, the court saying the Supreme Court alone had power to review the case. The latter case was then taken to the Supreme Court, which court refused to dismiss the writ and decided the case as reported in 217 U. S. 172, 30 Sup. Ct. 463 (54 L. Ed. 708, 27 L. R. A. [N. S.] 823). In its opinion that court approved the decision of the lower court, saying:

"For these propositions the court cited Board of Trade v. Hammond Elevator Co., 198 U. S. 428 [25 Sup. Ct. 740, 49 L. Ed. 1111]; United States v. Jahn, 155 U. S. 109 [15 Sup. Ct. 39, 39 L. Ed. 87]; St. Louis Cotton Compress Co. v. American Cotton Co., 125 Fed. 195 [60 C. C. A. 80]; and, as we have seen, dismissed the case on the ground that this court alone had the power to review the decision of the circuit court. We concur in the views of the Circuit Court of Appeals, for which also may be cited Kendall v. American Automatic Loom Co., 198 U. S. 477 [25 Sup. Ct. 768, 49 L. Ed. 1133]."

In view, therefore, of the Supreme Court exercising jurisdiction in the Davis and Kendall Cases which involved questions common to all courts, and of its citing in support of its action St. Louis Co. v. American Co., we are warranted in regarding the holding in the latter case that section 5 "does not limit the questions of which it treats to those which condition the jurisdiction of the federal courts as such as distinguished from those which condition the jurisdiction of all courts" as a construction approved by the Supreme Court.

In the light of these decisions, it is clear the Supreme Court and that court alone could review the judgment in this case, and that the motion in the Circuit Court of Appeals to dismiss for want of jurisdiction should prevail. Its refusal to dismiss is justified by the majority opinion on the ground that the plaintiff brought the case here for review on the merits as well as the jurisdictional question. The answer to that contention is simply that the case is not before

this court on the merits, and this for the simple reason that the court below did not pass on the merits, and there is therefore nothing to review but its judgment against the plaintiff for want of jurisdiction. The error of the assumption that the case is before this court for review of the merits is shown by the fact that this court does not dispose of the merits or discuss them in its opinion, but affirms the judgment of the court below, and holds it rightly decided the case on the question of want of jurisdiction. It seems to me the plain duty of the Court of Appeals to dismiss this case for want of jurisdiction, and, because it has assumed a jurisdiction the law vests in the Supreme Court alone, I am constrained to record this my dissent.