———o———

LANGDON et al. v. PENNSYLVANIA R. CO.

(Circuit Court, E. D. Pennsylvania.  February 24, 1911.)

No. 282.

1. COMMERCE (§ 85*)—INTERSTATE COMMERCE ACT—AMENDMENTS—EFFECT.
The Hepburn amendment of 1906 (Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]) to the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) materially restricted the jurisdiction of the courts, and the primary jurisdiction of the Interstate Commerce Commission, particularly under section

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

10. of Act March 2, 1889, c. 382, 25 Stat. 862 (U. S. Comp. St. 1901, p. 3172), has been considerably extended.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 85.*]

2. COMMERCE (§ 85*)—INTERSTATE COMMERCE ACT—JURISDICTION OF COURTS.

The original jurisdiction of the federal courts under section 9 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) has not been entirely destroyed, and they still may redress such wrongs as can consistently with the act be redressed without previous action by the Interstate Commerce Commission, and, when one sues for discrimination by a carrier, it is necessary in the first instance to determine whether the wrong can be redressed by the courts.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 85.*

Jurisdiction of federal courts of suits under interstate commerce act, see note to 11 C. C. A. 318.]

Consolidated actions by John Langdon and by others against the Pennsylvania Railroad Company. On defendant's motion to dismiss. Motion overruled.

J. W. M. Newlin, for plaintiffs.
John Hampton Barnes, for defendant.

HOLLAND, District Judge. This is a motion by the defendant to dismiss these suits against the plaintiffs for want of jurisdiction, for the following reasons:

"The plaintiffs, as will appear by reference to the record in each of the said cases and to the testimony and proceedings in the trial thereof, are seeking to recover damages from the defendant upon the ground that certain of its regulations and practices were of a discriminatory character and subjected the plaintiffs to loss and damage. The loss and damage so sustained is claimed to have resulted from payments made by the defendant to certain shippers of coal as follows: To the Altoona Coal & Coke Company, the Glen White Coal & Lumber Company, and the Berwind White Coal Company, for services rendered by these shippers and to the Berwind White Coal Company for the amount of freight charges paid by it at the rate in force when the shipments were made in excess of the rate of freight in force at the time the contracts were made for the sale of the coal. The payments to the Altoona Coal & Coke Company, the Glen White Coal & Lumber Company, and the Berwind White Coal Company for services are alleged as discriminatory in all of the cases, and were made during the entire period covered thereby. The payments made upon overlapping contracts were alleged as discriminatory in three cases only, namely, John Langdon, American Union Coal Company, and Huntingdon Coal Company. All of the payments complained of were of such a character that, if they operated to secure preference in favor of those to whom they were made, such preference affected not only the plaintiffs, but all shippers generally as a class, whose mines were located in the district or region in which the mines of the plaintiffs in the said several cases were located, and these shippers comprised a very large number. Under these circumstances, your petitioner is advised, and therefore avers, that the question whether its regulation or practice in making these payments was or was not contrary to the provisions of the interstate commerce act, which is the underlying issue in these actions, is one which, having regard to the principles determined by this court and the Circuit Court of Appeals for this circuit, and by the Supreme Court of the United States, must be determined primarily by the Interstate Commerce Commission, and that, therefore, this court is without jurisdiction to pass upon and to determine the issues involved in these actions."

The answer (1) denies that the questions involved must primarily be determined by the Interstate Commerce Commission, and asserts

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

jurisdiction in this court under section 9 of the interstate commerce act; (2) claims that, if it be held that any preliminary inquiry by the Interstate Commerce Commission was necessary, such inquiry has been made by the Interstate Commerce Commission, as appears by its report of January 25, 1907, which report is made part of the answer; and (3) it is urged that the pleadings and evidence in the several causes make it clear that the allowances in question were plain, secret rebates and discriminations. To which answer a rejoinder is filed by the defendant denying the averment in the answer that this court has jurisdiction under the ninth section of the interstate commerce act, and insists that the jurisdiction rests primarily in the Interstate Commerce Commission under the provisions of the thirteenth, fifteenth, and sixteenth sections of the act to regulate commerce, and in the Circuit Court only under section 16 of the commerce act to enforce any order the Interstate Commission might see fit to make in regard to the alleged discriminatory payments made by the defendant, and further rejoins that the inquiry by the Interstate Commerce Commission in regard to these payments in question was an inquiry directed by Congress and simply a finding of fact and no finding of illegality of any practices described in the report, and that there was no order made that the carrier should desist therefrom, and, further, that these actions are not brought upon any such order as is required by section 16 of the interstate commerce act.

Prior to the enactment of the Hepburn amendment of June 29, 1906, it was held that "the independent right of an individual originally to maintain actions in courts to obtain pecuniary redress for violations of the act conferred by the ninth section must be confined to redress of such wrongs as can, consistently with the context of the act, be redressed by the courts without previous action by the commission, and therefore does not imply the power in a court to primarily hear complaints concerning wrongs" arising out of alleged "unjust discriminations and undue preferences resulting from a published tariff schedule, in accordance with the provisions of the commerce act," but "that the shipper seeking reparation predicated upon the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule." Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 442-448, 27 Sup. Ct. 356, 51 L. Ed. 553.

[1] There is no doubt but that by the enactment of the amendments of 1906 the jurisdiction of the courts has been materially restricted, and the primary jurisdiction of the Interstate Commerce Commission, particularly under section 10, Act of 1889 (Act March 2, 1889, c. 382, 25 Stat. 862 [U. S. Comp. St. 1901, p. 3172]), has been considerably extended. Baltimore & Ohio Railroad Co. v. United States of America ex rel. Pitcairn Coal Co. et al., 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 164-171.

The Supreme Court, in the Pitcairn Case, supra, held that:

"Grievances produced by regulations adopted by a railway company for the distribution of coal cars, * * * which are alleged to violate the pro-

visions of the act to regulate commerce, * * * prohibiting unjust preferences, * * * cannot be redressed [in the courts] in advance of the action of the Interstate Commerce Commission by mandamus to prohibit the acts complained of and prescribe a rule for the future, since the provisions of the act of March 2, 1889 (section 10), authorizing mandamus to compel the furnishing of cars and other facilities for transportation, must be limited either to the performance of duties which are so plain and so independent of previous administrative action of the commission as not to require a prerequisite exertion of power by that body," etc.

In the Circuit Court of Appeals of the Third Circuit, in Morrisdale Coal Company v. Pennsylvania Railroad Company, 183 Fed. 929, Judge Lanning, after a careful consideration of the cases decided by the commission and the courts, involving these and analogous questions, said:

"These cases conclusively establish the doctrine that the Interstate Commerce Commission alone has original jurisdiction to determine whether an existing rate schedule, or an existing regulation or practice affecting rates, or an existing regulation or practice of any other kind affecting matters sought to be regulated by the act, is unjust or unreasonable, or unjustly discriminatory, or unduly preferential or prejudicial."

This broad and comprehensive summary of the cases, while not exactly a repitition of the provisions of the commerce act as found in the fifteenth section as amended by the fourth section of the act of June 29, 1906, it is not more helpful in the determination of whether or not the wrongs in these cases at bar sought to be redressed can or cannot, "consistently with the context of the act, be redressed by the courts without previous action by the commission." The statement by the court can give it no broader or comprehensive meaning than it gets from the amendatory act of 1906, and does not enlarge the scope of the court's decision in the Morrisdale Case beyond the question considered, which is concisely stated to be that:

"A party claiming to be injured by a discriminatory rule for the distribution of coal cars cannot maintain in a court of law an action for the recovery of damages before the Interstate Commerce Commission has investigated the case and determined by its report that the rule is or was discriminatory. The determination of that question, at least, involves only the performance of administrative functions which, under the act, are to be performed by the commission, and not by the court."

In this we have a determination in the Third Circuit that a suit for damages resulting from an alleged discriminatory distribution of coal cars under a general regulation is such wrong as cannot, consistently with the context of the act, be redressed by courts without previous action by the commission. The comprehensive language of this amendment, used by Judge Lanning, must be read in connection with the statement of the Supreme Court as to the original jurisdiction still remaining in the courts under section 9, as stated in the Abilene Case, and under section 10 of the act of March 2, 1889, as set forth in the Pitcairn Case.

[2] The original jurisdiction of the federal court under section 9 has not been entirely destroyed, but it still may redress "such wrongs as can, consistently with the context of the act, be redressed by courts without previous action by the commission," and, whenever a complainant comes into the courts to redress a wrong which he alleges has

resulted from some discriminatory act of a common carrier, it will always be necessary in the first instance to determine whether or not it is a wrong which can be redressed by the courts. In cases where the wrong complained of is alleged to result, not from a regulation, but from a secret practice, applicable only to a few favored shippers along the line, the question as to whether the commission must first pass upon the illegality of the practice has not been decided.

We have it definitely determined that such alleged violations of the act as were considered in the Abilene Case, the Pitcairn Case, and the Morrisdale Coal Company Case are such as must be primarily considered by the Interstate Commerce Commission; but there is no appellate adjudication of the question as to whether or not alleged discriminatory acts producing injury, such as these set forth in the plaintiffs' statements of claim, must primarily be investigated by the Interstate Commerce Commission. There is some evidence submitted which tends to show that these payments are secret payments to particular shippers, and not general in their character; and whether or not such complaints must first be considered by the Interstate Commerce Commission will not now be determined. These cases in my judgment are close to the dividing line, and I deem it my duty to defer passing upon the question of jurisdiction until there has been a determination of the cases upon the merits.

There are some questions of fact yet to be developed, which I think may be material, and that is the evidence of the precise nature of these payments and practices involved, whether they are general to all owners of lateral roads, or whether they have been simply made to particular shippers. It is also a matter of considerable importance that these cases have been submitted to the jury thus far at great labor and expense. It will require comparatively little more work to complete the trial before the jury, and this question of jurisdiction can more appropriately be considered under all the circumstances after the verdict.

The court declines now to pass upon the question of jurisdiction, and reserves a determination thereof until after a trial of the cases upon the merits.