JACOBY et al. v. PENNSYLVANIA R. CO.

(District Court, E. D. Pennsylvania.    November 12, 1912.)

No. 2,008.

COMMERCE (§ 85*)—INTERSTATE COMMERCE COMMISSION—JURISDICTION TO AWARD DAMAGES.

The power conferred on the Interstate Commerce Commission by section 16 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165]), as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1911, p. 1301), to award damages to a shipper for violation of the act by an interstate carrier, is not limited to cases where the damages arise from an excessive rate or charge, but extends to all cases where the shipper's common-law remedy is abrogated, and he is required to apply for redress in the first instance to the Commission, and such damages may be awarded on a finding of unjust and discriminatory regulations and practices in the distribution of coal cars in times of shortage.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. § 85.]

Action by W. F. Jacoby and Isaac C. Weber, copartners trading as W. F. Jacoby & Co., against the Pennsylvania Railroad Company. On demurrer to plaintiffs' petition.    Overruled.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Wm. A. Glasgow, Jr., of Philadelphia, Pa., for plaintiffs.

Francis I. Gowen and John G. Johnson, both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. This suit was brought to recover damages from the Pennsylvania Railroad Company which the plaintiffs claim to have suffered by reason of unjust and unlawful discrimination against the plaintiffs, practiced by the defendant, in violation of the act to regulate commerce, in the distribution of coal cars in the Clearfield coal region of Pennsylvania, in which the coal mines owned and operated by the plaintiffs were situated.

The petition sets out the facts upon which the plaintiffs' claim of unlawful discrimination is based. It further sets out that in June, 1907, the plaintiffs filed with the Interstate Commerce Commission a complaint setting forth the unjust, unreasonable, and discriminatory practices of the defendant in violation of the act to regulate commerce, and praying for a hearing and an order awarding the plaintiffs reparation in damages. It recites that, after answer and joinder of issue, the cause was heard and argued by all the parties, and that a report was duly filed, in which the Interstate Commerce Commission found that the rules, regulations, and practices of the defendant, of which the plaintiffs complained, unduly discriminated against them, and that the Commission thereupon on March 11, 1912, made an order of reparation against the defendant in the sum of $21,094.39, with interest at the rate of 6 per cent. per annum from June 28, 1907. The suit is brought to recover the principal and interest awarded, amounting to $27,332.55, with interest from June 1, 1912, "as and for damages and reparation, in accordance with a report and order of the Interstate Commerce Commission, dated March 11, 1912."

The defendant demurs, upon the ground that the action is brought to recover the amount of an award which the Commission was without authority to make, because the authority conferred by the acts of Congress does not extend to nor include the making of awards of the character of that which forms the basis of the action, and because the Commission has not been empowered to entertain claims for damages of the character asserted by the plaintiffs in the proceeding instituted by them before the Commission.

In the case of Morrisdale Coal Co. v. Pennsylvania Railroad Co., 176 Fed. 748, where a suit was brought in this district to recover damages for alleged unlawful discrimination in distribution of coal cars, in violation of the Interstate Commerce Act, the plaintiff had not, prior to bringing suit, filed a complaint with the Interstate Commerce Commission, and obtained a ruling of the Commission finding the alleged discriminatory practice unlawful, nor obtained an order from the Commission for reparation. There was a trial by jury, and a return of a special verdict. The defendant moved to dismiss the suit, upon the ground that the Circuit Court was without primary jurisdiction to entertain the action. The question was whether, in a suit to recover damages for an alleged unlawful discrimination, in which the question of rates was not involved, a previous application to the In-

terstate Commerce Commission for relief under section 13 of the act to regulate commerce was a prerequisite to maintaining an action in court; the Supreme Court having held in the case of Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, that a shipper seeking reparation predicated upon the unreasonableness of an established rate must primarily invoke redress through the Interstate Commerce Commission, which body alone it was declared is vested with power originally to entertain proceedings for the alteration of an established schedule. The motion to dismiss for want of jurisdiction was granted by Judge McPherson, under the authority of the decision of the Supreme Court in the cases of Texas & Pacific Railway Co. v. Abilene Cotton Oil Co.. 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, Baltimore & Ohio Railroad Co. v. United States ex rel. Pitcairn Coal Co., 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292, and Interstate Commerce Commission v. Illinois Central Railroad Co., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280. The judgment of the Circuit Court was affirmed by the Circuit Court of Appeals. Morrisdale Coal Co. v. Pennsylvania Railroad Co., 183 Fed. 929, 106 C. C. A. 269.

In the case at bar it is conceded by the defendant that, in order to maintain the present action, it was necessary for the plaintiffs to first complain to the Interstate Commerce Commission and obtain a ruling of that body upon the lawfulness or unlawfulness of the alleged discriminatory practice; but it is contended that the Commission, having passed upon the practice, exhausted its authority, and under the act had no power to make an award of damages in a case like this, where the order of reparation involves a finding which is not the result of a mere calculation, as is the case in a cause of action arising from alleged discrimination in rates. It was argued by counsel for the defendant that in the Morrisdale Case the question of the Commission's primary jurisdiction to make an award of reparation was not decided by Judge McPherson. The position of the defendant is thus stated in counsel's brief:

"It will be manifest, however, from a reading of the whole opinion, that Judge McPherson considered solely the question of the right of the courts to entertain actions for damages, in the absence of the Commission's primary consideration and condemnation of the carrier's regulations, and that the question whether the Commission's primary jurisdiction extended beyond the consideration of the questions which were involved in reaching a decision as to whether or not the carrier's regulations were discriminatory was really not considered nor passed upon by him at all. True it is that he did speak of this jurisdiction. He did say that in his opinion the Commission 'has the primary jurisdiction to award reparation,' but it is clear that he was speaking of the jurisdiction of the Commission generally to entertain complaints of the character which was involved in the action pending before him, and had not in mind the question whether the Commission's jurisdiction was confined to the administrative features of the Interstate Commerce Act, or went further and included the performance of the judicial functions involved in considering and passing upon claims for damages of the character which the Morrisdale Coal Company was endeavoring to recover."

The Circuit Court of Appeals in its decision refrained from determining the question of the jurisdiction of the Commission to award damages, because that question was not raised in the briefs nor in

the record, and was not necessary for the determination of the case, after the one jurisdictional question, that of the necessity of the Commission passing upon the discriminatory nature of the practice of the carrier, was determined. Judge Lanning said, however, in his opinion:

"As already suggested, the letter of the statute seems to confer upon the Commission the power to assess damages in every case of discriminatory practices. Its procedure in making the assessment constitutes no part of a judicial proceeding. In a court of law its finding and order are but prima facie evidence of the damages sustained."

And Judge McPherson in his opinion in the Circuit Court said:

"In a word, and without repeating the language of the Supreme Court that seems to me to justify the conclusion, I hold that the Commission has the primary jurisdiction to award reparation for such damages as may have been caused by a preferential practice in distributing coal cars in case of shortage, and that the Circuit Court has not the primary power to award such damages, even although they may have been caused by a practice that did not prevail at the time when the suit was brought."

The case at bar was one of a group of cases considered together by the Interstate Commerce Commission, of which the case of Hillsdale Coal & Coke Co. v. Pennsylvania Railroad Co., 19 Interst. Com. R. 356, was one. The action of the Commission in that case is referred to in Judge Lanning's opinion in the Circuit Court of Appeals in the Morrisdale Coal Co. Case in the following language:

"It has therefore been held by a majority of the Commission in Hillsdale Coal & Coke Co. v. Pennsylvania R. R. Co., decided March 7, 1910, that it has no authority or power to assess and determine the measure, of damages in such a case as the one now before us. The view of the majority of the Commission was that the only damages it may assess are rate damages, or damages that can be measured by the difference in the rate actually charged and the rate which, for any reason under the act, ought to be charged. The same view had been previously expressed by a majority of the Commission in Joynes v. Pennsylvania R. R. Co., 17 Interst. Com. R. 361. 'As to whether we may go beyond the transportation question, the alleged discriminatory rules and practices,' said the majority, through Mr. Commissioner Harlan, 'and enter upon an inquiry as to the amount of the damage that may have been suffered by the complainant, the commission is divided, as in the case to which we have just alluded (the Joynes Case). The majority is still of the opinion that it is not for us, under the law, to assess and determine the measure of the damages thus sustained by the complainant, that being a judicial question for the courts.' Inasmuch, however, as the case now before this court had been decided by the Circuit Court before the Hillsdale Coal & Coke Co.'s Case was decided by the Commission, it concluded to hear argument on the question of damages, to the end that, if the Commission should award damages, the question of its power so to do might ultimately come before the courts for their consideration."

In the supplemental report of the Commission of March 11, 1912, which was subsequent to the decision of the Circuit Court of Appeals in the Morrisdale Case, Commissioner Harlan stated the position of the Commission in the following language:

"In Joynes v. P. R. R. Co., 17 Interst. Com. R. 361, it was alleged that the defendant had given a preferred use of its terminal facilities in Pittsburgh to certain shippers of fruits and vegetables, in consequence of which the complainant had sustained loss by reason of the decay of certain of his ship-

ments. due to the delay in setting his cars at the unloading platform. We declined to make an award, three Commissioners dissenting, on the ground that this Commission was not authorized under the act to award damages of that character. The general principle announced was that money demands of that nature, arising out of discriminations ascertained and found by the Commission to have been practiced by an interstate carrier, are cognizable only in the courts, and that our jurisdiction extends to what is there referred to as rate damages, as distinguished from general damages of the kind demanded. These complaints, in which the same defendant was charged with discrimination in the distribution of its coal car equipment, and in which general damages are alleged to have been sustained by the petitioners by reason of its unlawful practices in that regard, were then pending before the Commission. While they were still under consideration, and after our conclusions in Joynes v. P. R. R. Co., supra, had been announced, the Circuit Court of the United States for the Eastern District of Pennsylvania, in Morrisdale Coal Co. v. P. R. R. Co., 176 Fed. 748, dismissed an action for damages alleged to have been sustained by reason of the same rules and regulations of the Pennsylvania Railroad respecting the distribution of its coal cars as are involved in the cases now before us. The claim was based on discrimination, and the authority of the court had been invoked, not only to determine that discrimination had been practiced by the defendant against the plaintiff, but also to ascertain and enter judgment for the damages so sustained. The court held that this Commission alone could entertain a complaint of that nature. See, also, Morrisdale Coal Co. v. P. R. R. Co., 183 Fed. 929 [106 C. C. A. 269]. It will be seen, therefore, that with respect to the principle announced in Joynes v. P. R. R. Co., supra, there is a conflict of view as between the Commission and the very court to which these complainants, if refused any relief here, would doubtless have to resort to secure a judgment for the damages here claimed to have been sustained. In order, therefore, to prevent a failure of justice in these cases, as well as to create an opportunity to secure a final ruling by the courts as to what should be our course of action in the future in such cases, we concluded to proceed with these claims; and having found that undue discriminations had been practiced by the defendant against the complainants, we ordered a reargument on the question of the amount of damages respectively sustained by them by reason thereof."

I find nowhere in the act language creating a distinction in the power of the Commission to award damages between cases arising from unlawful rates and those arising from unlawful regulations or practices. Section 8 imposes liability upon the common carrier for damages sustained by any person injured by any act of the carrier prohibited or declared to be unlawful in the act. By section 9 of the act it is provided that any person claiming to be damaged by any common carrier subject to the act can either make complaint to the Commission, as hereinafter provided for, or may bring suit for the recovery of damages in a District or Circuit Court of the United States, "but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt."

Section 13 gives the Commission jurisdiction upon complaints "of anything done or omitted to be done by any common carrier subject to the provisions of this act, in contravention of the provisions thereof," and provides that the carrier shall be relieved of liability to the complainant if it shall make reparation for the injury alleged to have been done, and, in case of a failure to satisfy the complaint, provides for investigation by the Commission. In the case of an investigation,

it is by section 14 made the duty of the Commission to make a report in writing in respect thereto, which shall state the conclusions of the Commission, together with its decision, order, or requirement in the premises, and in case damages are awarded such report shall include the findings of fact on which the award is made.

Under section 15, the Commission, if it is of opinion that any rates or charges or any regulations or practices are unjust or unreasonable, or unjustly discriminatory, or unduly preferential or prejudicial, is authorized to determine what will be the just and reasonable rates or charges and what regulation or practice is just, fair, and reasonable, and to make orders that the carrier cease and desist from such violation to the extent to which the Commission finds the same to exist. The section further provides:

"All orders of the Commission, except orders for the payment of money, shall take effect within such reasonable time, * * * as shall be prescribed in the order of the Commission."

Section 16 provides:

"That if, after hearing on a complaint made as provided in section 13 of this act, the Commission shall determine that any party complainant is entitled to an award of damages under the provisions of this act for a violation thereof, the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named. If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the Circuit Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, or in any state court of general jurisdiction having jurisdiction of the parties, a petition setting forth briefly the causes for which he claims damages, and the order of the Commission in the premises. Such suit in the Circuit Court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be prima facie evidence of the facts therein stated."

As held by the Supreme Court in the Abilene Cotton Oil Co. Case:

"Power was conferred upon the Commission to hear complaints concerning violations of the act, to investigate the same, and, if the complaints were well founded, to direct not only the making of reparation to the injured persons, but to order the carrier to desist from such violation in the future. In the event of the failure of a carrier to obey the order of the Commission, that body, or the party in whose favor an award of reparation was made, was empowered to compel compliance by invoking the authority of the courts of the United States in the manner pointed out in the statute, prima facie effect in such courts being given to the findings of fact made by the Commission."

And in construing the effect of the ninth section of the act, Mr. Justice White in his opinion announced the following conclusion:

"We think that it inevitably follows from the context of the act that the independent right of an individual originally to maintain actions in courts to obtain pecuniary redress for violations of the act conferred by the ninth section must be confined to redress of such wrongs as can, consistently with the context of the act, be redressed by courts without previous action by the Commission, and, therefore, does not imply the power in a court to primarily hear complaints concerning wrongs of the character of the one here complained of."

The Circuit Court of Appeals in the Morrisdale Coal Co. Case, in discussing the conclusions of the Supreme Court in the Abilene Oil Co. Case as to the effect of sections 9 and 22 of the act, held:

"We conclude, therefore, that if, except for the act to regulate commerce, the Morrisdale Coal Company would have had a common-law right of action against the Pennsylvania Railroad Company for the damages here claimed, that right was not merely suspended while the old rule of distribution was in operation, but was taken away for all time, and the coal company given a substituted right of procedure before the Commission, at any time within one year after June 29, 1906, for a determination by the Commission of the question whether the rule complained of was discriminatory, unless, indeed, the Commission has no power, under the act, to determine whether a rule for the distribution of cars is discriminatory."

In Judge Lanning's opinion, after reviewing the decisions of the Supreme Court in the cases of Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., Baltimore & Ohio Railroad Co. v. Pitcairn Coal Co., and Interstate Commerce Commission v. Illinois Central R. R. Co., it was held:

"These cases conclusively establish the doctrine that the Interstate Commerce Commission alone has original jurisdiction to determine whether an existing rate schedule, or an existing regulation or practice affecting rates, or an existing regulation or practice of any other kind affecting matters sought to be regulated by the act, is unjust or unreasonable, or unjustly discriminatory, or unduly preferential or prejudicial, and that the courts cannot, by mandamus, injunction, or otherwise, control or modify any order of the Commission made by it in the due performance of its merely administrative functions. Of course, there may be cases involving constitutional or legal rights in which judicial questions for the determination of the courts may be presented. It is also the established doctrine that, where the subject-matter of the complaint is an alleged unreasonable or prejudicial rate charge, the Commission has the power, after determining that the charge was excessive, to award damages to the complainant. In such case the award would probably be a mere matter of calculation, and would be a sum equal to the difference between the charge found to be reasonable and the charge actually made by the carrier. In a case where the alleged discriminatory rule has relation to the distribution of coal cars, it is obvious that, if the Commission sustains the complaint and prescribes what shall thereafter be a reasonable rule of distribution, an award of damages to the complainant for injuries sustained under the operation of the discriminatory rule cannot be a mere matter of calculation."

After stating the position of the Interstate Commerce Commission, which is recited above, Judge Lanning continued:

"As already suggested, the letter of the statute seems to confer upon the Commission the power to assess damages in every case of discriminatory practices. Its procedure in making the assessment constitutes no part of a judicial proceeding. In a court of law its findings and order are but prima facie evidence of the damages sustained. We do not find it necessary, however, to decide at present the question on which the members of the Commission are divided. If judicial action shall be taken in the Hillsdale Coal & Coke Co.'s Case, the court whose jurisdiction will be invoked will doubtless be the court from which our present case has come. We have not had the benefit of any argument on the question. It is not even suggested in the record or briefs of this case. For the present, it is sufficient for us to say that in our opinion a party claiming to be injured by a discriminatory rule for the distribution of coal cars cannot maintain in a court of law an action for the recovery of damages before the Interstate Commerce Commission has

investigated the case and determined by its report that the rule is or was discriminatory. The determination of that question, at least, involves only the performance of administrative functions, which, under the act, are to be performed by the Commission, and not by any court. Whether, after the Commission has found such a rule to be discriminatory, it is its duty to proceed to assess the damages, if any, which the complaining party has sustained, or whether they are to be recovered by an action in some court without any preliminary assessment by the commission, is a question which, since it has not been argued before us, and since its decision is not necessary to the disposition of the case we now have in hand, we should not at present decide."

Without further referring specifically to the later decisions of the Supreme Court, which reaffirmed the doctrines laid down in the decisions followed in the Morrisdale Coal Co. Case, it may be stated as established that the act to regulate commerce was intended by Congress to afford an effective and comprehensive means for redressing wrongs resulting from unjust discriminations and undue preference by carriers, and that a shipper cannot maintain an action at common law for damages arising from such wrong, but must first make his complaint to the Interstate Commerce Commission; in other words, his common-law remedy is abrogated by the procedure established by the act to regulate commerce. It was the evident intent of Congress that the procedure established by the act should be substituted for that which had theretofore obtained at common law.

Section 9 provides that a person claiming damages must "elect which one of the two methods of procedure herein provided for" he will adopt, and the Supreme Court has held that the right to originally maintain actions in court for violations of the act conferred by this section must be confined to redress of such wrongs as can consistently with the context of the act be redressed by courts without previous action by the Commission. The method of procedure referred to in section 9 is clearly outlined in sections 13, 14, 15, and 16 of the act, and, as said by Judge Lanning in the Morrisdale Case, the procedure of the Commission in making the assessment constitutes no part of a judicial proceeding. The carrier is not in any manner deprived of its right to a determination of its liability by a court and jury, for the Commission has no power under section 16 to enforce its orders for payment of money, and, in case of failure upon the part of the carrier to pay, the shipper must bring suit in a court of law, where the findings and order are made but prima facie evidence of the damages sustained.

Inasmuch as Congress has not created any distinction in the procedure before the Interstate Commerce Commission preliminary to bringing suit between actions predicated upon rates and those predicated upon regulations and practices, it must be assumed that the procedure which was intended to apply to one class of cases was intended to apply to both. The argument on behalf of the defendant, as against the power of the Commission to make an award of damages in cases arising from discriminatory regulations and practices, I think must be regarded as only an argument of inconvenience, which assails the wisdom of the legislation or its efficiency, which are matters for Con-

gress, and not for this court, to determine. This view of the matter is, I think, reinforced by the provision of section 16, making the findings and order of the Commission prima facie evidence of the facts therein stated. Under the decisions, the courts cannot by mandamus, injunction, or otherwise control or modify any order of the Commission made by it in the due performance of its merely administrative functions.

The sole question before the courts in passing upon the validity of an administrative order of the Interstate Commerce Commission is whether it had power to make the order, and not the mere expediency or wisdom of having made it. This being the case, what purpose could Congress have had in providing that, on the trial of a suit to recover an award by the Interstate Commerce Commission of damages, the findings and order of the Commission shall be prima facie evidence of the facts therein stated, if the findings and order are to relate solely to the question whether or not the regulations and practices complained of were discriminatory? If the findings and order as to that question alone are merely prima facie evidence of the facts therein stated, then the carrier would be permitted to rebut the prima facie effect of the findings and order, and to introduce evidence which had not been introduced before the Commission, which would result in a trial by a court and jury of the very questions as to which the Supreme Court has held that the findings and order of the Commission are final.

The conclusion seems to be inevitable that, in making the findings and order of the Commission prima facie evidence only, it was intended by Congress that the findings and order should include what must ultimately be decided by a court and jury in case the carrier does not comply with the order for the payment of money; that is to say, the amount of the damages which the plaintiff has sustained. Congress having established a method of procedure and a rule of evidence governing actions under the statute, without indicating a different procedure to be followed in cases involving a discriminatory practice from that to be followed in cases involving unjust or unreasonable rates, I am of the opinion that the Interstate Commerce Commission had authority, not only to pass upon the lawful or unlawful nature of the practice in this case, but also to make an order for reparation in damages, and that the present suit is properly based upon the award by the Interstate Commerce Commission.

The demurrer is therefore overruled.