NATIONAL POLE CO. v. CHICAGO & N. W. RY. CO.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1914.)

No. 1973.

1. COURTS (§ 405*)—FEDERAL COURTS—CIRCUIT COURT OF APPEALS—JURISDICTION.

Where a demurrer was sustained to a complaint in an action against an interstate carrier to recover alleged unjust and unreasonable charges on the ground that the complaint did not show that plaintiff's cause of action had been first submitted to and established by the Interstate Commerce Commission, but the trial court did not put its ruling in the form that the omission precluded the court from considering the merits of the complaint, but rather included such proposition, and also that such omission constituted a failure to state a cause of action on the merits, an appeal was properly taken to the Circuit Court of Appeals and not directly to the Supreme Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*

Jurisdiction of Circuit Court of Appeals in general, see notes to Law Ow Bew v. United States, 1 C. C. A. 6; United States Freehold Land & Emigration Co. v. Gallegos, 32 C. C. A. 475.]

2. CARRIERS (§ 36*)—INTERSTATE COMMERCE ACT—JURISDICTION—SUFFICIENCY OF COMPLAINT—DETERMINATION.

Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) § 1, requires that all of charges for transportation shall be reasonable and denounces every unreasonable charge as unlawful and prohibited. Section 8 gives every injured party a right of action for damages on account of carriers doing anything that is prohibited or declared unlawful by the act. Section 9 authorizes the injured party either to make complaint to the commission as provided for in section 13, or to sue in a federal District Court, but denies him the right to pursue both remedies and requires him to elect which he will adopt. Section 15 authorizes the commission after a full hearing on the complaint to determine what charges and practices are unjust and unreasonable and to prescribe what just and reasonable charges and practices shall be observed. *Held* that, where plaintiff brought suit in a federal court to recover for alleged unjust and unreasonable charges without submitting his complaint to the commission, he thereby elected under section 9 to sue in the federal court, and, such court being given authority by such section to receive complaints, it had jurisdiction to determine whether the complaint stated sufficient facts to constitute a cause of action.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. § 36.*]

**3. CARRIERS (§ 36*)—INTERSTATE REGULATIONS—PERSONS ENTITLED TO SUE—REAL PARTY IN INTEREST.**

Where, in an action against an interstate railroad company to recover damages for the imposition of unreasonable and excessive charges in the shipment of poles, it appeared that some of the shipments were made by plaintiff, an objection that plaintiff was not the real party in interest could not be sustained because it was claimed that the assignment of rights of other shippers to the same relief were invalid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 95; Dec. Dig. § 36.*]

**4. COMMERCE (§ 89*)—INTERSTATE COMMERCE—DISCRIMINATING PROVISIONS—INVALIDITY—RIGHT TO SUE—PRESENTATION OF CLAIM TO COMMISSION.**

Defendant, interstate railroad company, published a tariff on poles providing that the poles might be dressed, sawed, concentrated in transit, and shipped from origin to concentration point and then to destination at through rates which were less than the sum of the locals, but only on condition that the shipping bill issued at the point of origin specified the ultimate destination. This condition, having been submitted to the Interstate Commerce Commission on the complaint of other shippers, was declared void and an order passed that it should be disregarded. *Held*, that complainant was entitled to sue in the federal court to recover the difference in rates paid on shipments of poles on which it was not accorded through rates because of the enforcement of such condition prior to its being declared void by the commission without itself presenting its cause of action to the commission and obtaining a reparation order on which to sue; such requirement imposed by Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165]) § 16, being intended only for the exercise of the commission's legislative powers to determine the reasonableness of the condition, and the commission having once acted, it was not necessary that an injured shipper should again present the same question to the commission before electing to sue directly in the federal court as authorized by section 9.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 89.*]

In Error to the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

Action by the National Pole Company against the Chicago & Northwestern Railway Company. Judgment (200 Fed. 185) for defendant, and plaintiff brings error. Reversed, with directions.

Plaintiff in error, plaintiff below, alleged in its complaint that plaintiff and its assignors made shipments of poles over defendant's railroad from various initial points in Michigan to a concentration point, Escanaba, Mich.; that plaintiff and its assignors shipped the same poles in interstate commerce over defendant's railroad from Escanaba to various ultimate destinations throughout the United States; that defendant's published tariff, in force at all times, provided that poles might be dressed, sawed, or concentrated in transit, and might be shipped from origin to concentration point and thence to destination at through rates (less than the sum of locals), but only on condition that the shipping bill issued at origin should specify ultimate destination; that the shipping bills issued for plaintiff's poles at points of origin failed to specify the ultimate destinations; that plaintiff was required by defendant to pay and did pay the local rates from points of origin to the concentration point and the local rates thence to the ultimate destinations (and the excess of such payments above the through rates is figured by plaintiff in each case from defendant's aforesaid tariff sheet); that the aforesaid condition in said tariff was unjust and unreasonable and resulted in excessive charges; and that, after plaintiff's aforesaid shipments and before the bringing of this action, the Interstate Commerce Commission on June 14, 1909 (16 Interst. Com. Com'n R. 382), on the complaint of other shippers, and after a full hearing, determined

and ruled that the aforesaid condition in the aforesaid tariff was wholly unreasonable and unjust and should be disregarded.

To this complaint defendant demurred on two grounds: (1) That the complaint failed to state facts sufficient to constitute a cause of action against defendant; and (2) that it appeared from the face of the complaint that the court was without jurisdiction to pass upon the matter complained of, because there had been no determination of it by the Interstate Commerce Commission.

The judgment reads: "The plaintiff having in open court waived all right to amend in case the demurrer should be sustained, it is ordered that said demurrer be and the same is hereby sustained; further adjudged and determined that plaintiff take nothing by this action, that said action be and hereby is dismissed on the merits, and that defendant have and recover of said plaintiff its costs herein."

In the trial court ([D. C.] 200 Fed. 185) attention seems to have been given exclusively to the merits. And in this court plaintiff's whole contention is that its complaint states a good cause of action, while defendant only insists that the absence of an allegation that the Interstate Commerce Commission, at plaintiff's petition therefor, had decided that plaintiff was entitled to reparation, left the complaint bad, and that the complaint shows affirmatively that plaintiff is not the real party in interest, and that the supposed cause of action is barred by limitations. No suggestion has come from either side that this court is without jurisdiction to entertain the writ of error.

Edward H. S. Martin, of Chicago, Ill., for plaintiff in error.

C. C. Wright, of Chicago, Ill., for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). [1] I. Appellate jurisdiction. In passing on the merits the trial court decided sub silentio that it had jurisdiction as a federal court under section 9 of the Interstate Commerce Act to hear the complaint. As a question of merits the court held that the failure to aver that plaintiff's grounds of complaint had first been submitted to and established by the Interstate Commerce Commission, made the complaint bad. If what was treated as a question of merits was in reality a question of jurisdiction of the court as a federal court, and if that was the only question decided, should the writ of error be sued out from the Supreme Court or from this court? If the trial court had put its ruling in the form that the failure to aver that plaintiff's grounds of complaint had first been submitted to and established by the Interstate Commerce Commission, precluded the court as a federal court from considering the merits of the complaint, the decisions in The Ira M. Hedges, 218 U. S. 270, 31 Sup. Ct. 17, 54 L. Ed. 1039, The Steamship Jefferson, 215 U. S. 130, 30 Sup. Ct. 54, 54 L. Ed. 125, 17 Ann. Cas. 907, and Mitchell Coal Co. v. Pennsylvania R. Co., 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472, would indicate that this case properly should have been taken directly to the Supreme Court. And the query arose during consultation whether, the one question being the effect of the omission of a certain averment, the form of the answer given by the trial court should determine the appellate jurisdiction. In the Hedges Case, supra, the court recognized that "there sometimes is difficulty in distinguishing between matters going to the jurisdiction and those determining the merits," and concluded that, although "it may be said that the two considerations coalesce, * * * at all events, the form of the de-

cree must be taken to express the meaning of the judge." If the two considerations coalesce, if all the substance is run into one mold, still the aspects of the obverse and reverse faces are from as separate points of view as if the faces were on separate castings. And if the judgment and the assignments of error actually present both aspects, this court has appellate jurisdiction. Darnell v. Illinois Central R. Co., 225 U. S. 243, 32 Sup. Ct. 760, 56 L. Ed. 1072; Morrisdale Coal Co. v. Pennsylvania R. Co., 183 Fed. 929, 938, 106 C. C. A. 269.

[2] II. Jurisdiction of the trial court. Section 1 of the act requires all charges for transportation to be reasonable and just, and denounces every unjust and unreasonable charge as unlawful and prohibited. Section 6 provides that carriers shall make, file, and publish schedules of their charges. Section 15 authorizes the commission, after a full hearing upon a complaint, to determine what charges and practices are unjust and unreasonable and to prescribe what just and reasonable charges and practices shall be observed by the carriers. Section 8 gives every injured party a right of action for damages on account of a carrier's doing anything that is prohibited or declared unlawful by the act. Section 9 authorizes the injured party either to make complaint to the commission as provided for in section 13 or to bring suit in a District Court of the United States, denies him the right to pursue both remedies, and requires him to elect which he will adopt. If he makes complaint to the commission and if the commission finds that he is entitled to damages and gives him a reparation order, he may sue upon the order either in a District Court of the United States or in a state court of general jurisdiction.

Plaintiff's complaint manifestly purported to be based upon the right of action given by section 8 for defendant's unlawful acts under sections 1 and 6 as determined by the commission under section 15. Manifestly, also, plaintiff elected under section 9 to sue in the federal court. And as the federal court was given by section 9 organic authority to receive complaints under section 8, the court below had jurisdiction to determine the sufficiency of the present complaint to constitute a cause of action, just as a court having organic authority to entertain replevin suits has jurisdiction of the particular case wherein the complaint is bad for lack of an averment of demand before suit.

[3] III. Merits. Before taking up the substantial question it is proper to observe: (1) There is nothing in defendant's point that plaintiff is not the real party in interest. Some of the shipments were made by plaintiff. So it is immaterial whether claims of other shippers could lawfully be assigned to plaintiff or not, even if such a question could be raised on the present record. (2) Under the Wisconsin practice (adopted on the law side of the court below) the question of limitation can be presented only by special demurrer or by answer.

[4] We have taken the complaint, as did the trial court, to be sufficiently definite and specific to present the question in this form: After the commission at the complaint of another shipper had determined with respect to the very tariff under which plaintiff shipped that the condition relating to the recital in the bill of lading was unreasonable and unjust, and that, throughout the times during which plaintiff ship-

ped the through rate as published was the maximum reasonable and just rate, was plaintiff compelled to go to the commission and get a reparation order on which to sue under section 16, or could plaintiff exercise the choice professed to be given by section 9 and go directly to the federal court?

On its face section 9 clearly gives the option; but if other and paramount provisions of the act would be impaired by an unrestricted reading of section 9, then of course the option must be limited to conform to the legislative will as determined by a consideration of the act as a whole.

In Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, the carrier had filed and published its rates for interstate transportation; the shipper paid those rates, but claimed they were excessive; and in the shipper's suit the court found that the published rates were unreasonable, determined what were reasonable rates and what was the excess of the published above the reasonable, and rendered judgment for such excess. This judgment was reversed by the Supreme Court on the ground that, if different courts in different suits should find differently as to the reasonableness of the same rates or the justness of the same practices, the uniformity and equality of rates and practices, which were the prime objects of the act and for the maintenance of which the commission was created and given regulatory powers, would be utterly destroyed. In the language of the court:

"Indeed, no reason can be perceived for the enactment of the provision endowing the administrative tribunal, which the act created, with power, on due proof, not only to award reparation to a particular shipper, but to command the carrier to desist from violation of the act in the future, thus compelling the alteration of the old or the filing of a new schedule, conformably to the action of the commission, if the power was left in courts to grant relief on complaint of any shipper, upon the theory that the established rate could be disregarded and be treated as unreasonable, without reference to previous action by the commission in the premises. This must be, because, if the power existed in both courts and the commission to originally hear complaints on this subject, there might be a divergence between the action of the commission and the decision of a court. In other words, the established schedule might be found reasonable by the commission in the first instance and unreasonable by a court acting originally, and thus a conflict would arise which would render the enforcement of the act impossible."

In Robinson v. Baltimore & O. R. Co., 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288, the carrier, by its published tariff, made a discriminatory charge of fifty cents more per ton for transporting coal when loaded into cars from wagons than when loaded from tipples. The shipper claimed that this was an unjust discrimination, but failed to allege or prove that the unjustness (and the extent thereof) had been determined by the commission. Also it was admitted by the parties that the shipper had not presented to the commission any claim for reparation. The Supreme Court stated and answered two questions: First, that matters of unreasonable rates, unjust discriminations and undue preferences in published tariffs must be determined exclusively by the commission. Second, that a published report of the commission

is not in court by judicial notice, but must be offered in evidence. After the answer to the second question the following appears:

"The result, however, would have been the same had the decision been properly before the court. An examination of it discloses that it did not contain any finding or direction as to what, if any, reparation should be made because of prior exactions of the rate which it condemned. It did find that the complaining party in that proceeding had been injured by the refusal of the railroad company to furnish cars on certain occasions for the shipment of coal, and did direct that reparation therefor be made, but that is without bearing here."

This expression, in our opinion, is not decisive of the case before us, because we believe that the Supreme Court as a court did not intend to preclude inquiry into a matter that was not in the record then under consideration, and also because the expression seems to proceed on the theory that the commission had not fixed a basis for figuring the damages of one who had shipped under the condemned rate, while in the case before us the commission had fixed the basis, but on the complaint of a shipper other than the present plaintiff.

These decisions end the claim of shippers that they should recover judgments for excessive exactions in published tariffs while those tariffs stand uncondemned by the commission. To that extent the Abilene and Robinson Cases modify the apparent value of section 9. No controlling precedent, however, rules that section 9 is utterly deleted. Yet such would be the effect if it were found that every claim for damages had to be presented by the claimant to the commission for a reparation order. Under what circumstances, if at all, the option apparently offered by section 9 may be available, we will endeavor to determine from a consideration of the nature of the Interstate Commerce Act.

Varying secret rates, unjust discriminations, undue preferences, were the evils to be cured. Publicity, uniformity, and equality, with respect to all matters of rates and practices, were the remedies. And a new means was created for administering the remedies, namely, the commission with its supervisory and regulatory powers. The commission was added as an instrumentality of the administrative (executive) department of government, and two distinct classes of powers were conferred upon it, quasi legislative and quasi judicial.

When shippers before the commission challenge a published rate as unjust and demand the fixing of a just rate, and fail to make a claim or admit they have no claim for damages accrued, they present nothing but matter that is legislative in its nature. Congress directly and in the first instance might have inquired into the character and value of the particular transportation service now under investigation by the commission and have named the rate therefor in a statute. But, with the increasing complexities of human activities, it was impossible to cover the details of rate-making (and the same is true of many other subjects) by specific statutes; and so the board or commission form of legislation was used. That is, Congress declared the public policy and fixed the legal principles that were to control, and charged an administrative body with the duty of ascertaining within particular fields from time to time the facts on which the legal principles established by Congress would be brought into play. Such action by the commission,

to be constitutional, cannot of course be legislation, for the whole of the lawmaking power of the United States, except the advisory and veto power of the President, is in Congress. But since the Congressional prohibition of unjust rates cannot, by the terms of the act, be effective against a particular published rate, although unjust, until the commission has investigated the service in question and has established the standard of justness for all shippers who use that service, the action of the commission in regulation of rates is quasi legislative—it converts the actual legislation from a static into a dynamic condition.

When shippers before the commission challenge a published rate as unjust and demand the fixing of a just rate, and additionally ask a reparation order for damages measured by the excess of the published rate over the declared just rate as applied to their shipments, their additional or secondary demand, considered by itself, presents nothing but matter that is judicial in its nature. There is a controversy, between parties, in which none but the parties are interested, to be settled by hearing the evidence, finding the facts and applying the law, and the settlement to be binding only upon parties and privies. In such a controversy the facts to be found from the evidence are the facts that pertain to the particular shipments and payments of the complaining shipper, and the law to be applied is the Interstate Commerce Act by virtue of either its direct terms or an administrative, quasi legislative declaration of the commission. The commission's action in such a controversy, to be constitutional, cannot of course be judicial, for the whole of the judicial power of the United States is vested in its courts. But, while such action is of a judicial nature, in respect to power it is only quasi judicial, since a judicial determination of a controversy is a final determination embodied in a judgment or decree of a court and enforceable by execution or other writ of the court.

Turning now to section 8, that the "carrier shall be liable to the person injured for the full amount of damages sustained in consequence of any violation of the provisions of this act," let us see what is required to constitute a cause of action thereunder.

If a shipper states in his complaint that he paid 12 cents per hundredweight on certain described shipments, that during the times of the shipments the carrier had a published tariff of 10 cents per hundredweight on such shipments, and that the payments exacted of the shipper were unjust to the extent of 2 cents per hundredweight, the stated facts make a good complaint, for the statutory prohibition of unjust rates is directly effective by reason of the published rate's being equivalent to a statutory declaration of the maximum of reasonable rates. There need be no administrative, quasi legislative determination of conditions on which the statutory prohibition would be brought into effect. Such a complaint for damages is presentable to the commission for its quasi judicial action. Or, under section 9, the plaintiff may at once demand judgment in a federal District Court. Pennsylvania R. Co. v. International Coal Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446.

If a shipper states in his complaint that he paid 12 cents per hundredweight on certain shipments, that the carrier's published rate on

such shipments was 12 cents per hundredweight, and that the payments exacted of the shipper were unjust to the extent of 2 cents per hundredweight, the stated facts fail to constitute a cause of action, for the statutory prohibition of unjust rates cannot, in the face of the presumption attaching to the carrier's published rate, be effective until the commission has exercised its quasi legislative function of determining the just rate, with which the trier of the damage case may compare the facts respecting the plaintiff's shipments and the payments therefor exacted by the carrier. But when the rate-determining function has been fully exercised by the commission (and the function is exactly the same whether exercised over a present or future rate, or over a past or abandoned rate (Mitchell Coal Co. v. Pennsylvania R. Co., 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472), then the statutory standard is as definite and specific as if Congress itself had fixed the rate. And consequently it seems clear to us that, since legislation is for all citizens and subjects and therefore requires uniformity and equality, while judgments concern only the parties litigant and therefore may be variant or contradictory without affecting their nature, whenever damages are occasioned by unjust exactions and the standard of justness is definitely fixed in the act itself or in the quasi legislative determination of the commission, an injured party who has had no hand in procuring either the legislation or the quasi legislation is given a cause of action by section 8, and for his damages he may have by virtue of section 9 either a reparation order of the commission or a judgment of a federal District Court. This must be the result because, on the basis that all legislative functions have been completely and explicitly exercised, there would be nothing for the commission to do for an injured shipper except to apply to his particular facts the universal law, and that can be done as well in court without disturbing or obstructing the act's cardinal purposes of uniformity and equality in the legislative subject-matter of rates and practices.

While a different question was involved in Mitchell Coal Co. v. Pennsylvania R. Co., 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472, we believe that the line of reasoning therein employed is supportive of our conclusions.

"For doing an act prohibited by the statute (like departing from a published tariff), the injured party might sue the carrier without previous action by' the commission, because the courts could apply the law prohibiting a departure from the tariff to the facts of the case. But where the suit is based upon unreasonable charges or unreasonable practices there is no law fixing what is unreasonable and therefore prohibited. In such cases the whole scope of the statute shows that it was intended that the commission and not the courts should pass upon that administrative question. When such order is made it is as though the law for that particular practice had been fixed, and the courts could then apply that order, not to one case, but to every case—thereby giving every shipper equal rights and preserving uniformity of practice. Section 9 gives the plaintiff the option of going before the commission or the courts for damages occasioned by a violation of the statute. But since the commission is charged with the duty of determining whether the practice was so unreasonable as to be a violation of the law, the plaintiff must, as a condition of his right to succeed, produce an order from the commission that the practice or the rate was thus unreasonable and therefore illegal and prohibited. * * * The courts can then apply that law, and, measuring what

has been charged by what the commission declares should have been charged, can award damages to the extent of the injuries occasioned by the payment of the allowance found to have been unreasonable and unlawful."

According to the complaint now before us, the carrier had published in its tariff sheet certain through rates (less than the sum of the local rates) as the just and full compensation for its services in transporting poles from points of origin to the concentration point and thence to ultimate destinations; the carrier in the same tariff sheet and in respect to the same transportation service had promulgated a discrimination that had nothing to do with the cost or value of the carriage but was based upon the wording of the bill of lading; and the commission, after a full hearing of the matter, had determined that this discrimination was wholly unjust. This action of the commission made the statutory standard of just rates as definite and positive as if Congress itself in the act had forbidden this particular discrimination and had commanded that the through rates should be applied to all such shipments. That is, all legislative and quasi legislative functions necessary to compete operativeness of the act having been exercised, it was open to any shipper who was given a cause of action by section 8 to present his particular facts either to the commission or to a federal District Court under section 9.

The judgment is reversed, with the direction to overrule the demurrer and to proceed further not inconsistently with this opinion.