## NATIONAL HARNESS MFRS.' ASS'N v. FEDERAL TRADE COMMISSION et al.

(Circuit Court of Appeals, Sixth Circuit. December 7, 1920.)

No. 3289.

1. **Commerce ☞3—Congress can prevent unfair competition in interstate commerce.**

   Congress has the power to declare, as it did by the Federal Trade Commission Act (Comp. St. §§ 8836a–8836k), that unfair methods of competition in interstate commerce are unlawful, and to require that their practice cease.

2. **Constitutional law ☞80(2)—Trade-marks and trade-names ☞80½, New, vol. 8A Key-No. Series—Federal Trade Commission not given judicial powers or invalid executive powers.**

   The authority given the Federal Trade Commission to determine what methods of competition a given trader employs, and, provisionally, to determine whether such methods are unfair, subject to right of review by the courts, does not confer on the commission judicial powers, or invalid executive or administrative authority, contrary to Const. arts. 1, 2, 3, in view of the fact that the commission's determination is not only subject to review, but is enforceable only by the courts.

3. **Constitutional law ☞42—Party cannot complain of invalid sections not invoked against him.**

   A petitioner, seeking review of an order by the Federal Trade Commission requiring petitioner to desist from certain practices, cannot raise the question that the inquisitorial features of Federal Trade Commission Act, §§ 9, 10 (Comp. St. §§ 8836i, 8836j), violate Const. Amend. 4, which protects against unreasonable searches and seizures, where the commission did not attempt to exercise against petitioner the powers given by those sections.

4. **Trade-marks and trade-names ☞80½, New, vol. 8A Key-No. Series—Trade Commission has jurisdiction over incorporated association of manufacturers; "corporation."**

   Under Federal Trade Commission Act, § 5 (Comp. St. § 8836e), giving the commission jurisdiction when it has reason to believe that any person, partnership, or corporation is guilty of unfair competition, the commission has jurisdiction over methods of an association of manufacturers in a certain line, though the association is unincorporated, in view of section 4 of the act (section 8836d), defining a corporation as any company or association, incorporated or unincorporated, organized to carry on business for its own profit or that of its members.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corporation.]

5. **Associations ☞20(4)—Brought into court by service on officers and accessible members.**

   A voluntary association having many members may be brought into court by service on its officers and on such of its members as are known and can be conveniently reached; sufficient being served to represent all the diverse interests.

6. **Trade-marks and trade-names ☞80½, New, vol. 8A Key-No. Series—Association whose members are engaged in interstate commerce is subject to jurisdiction of Trade Commission.**

   An unincorporated association of manufacturers in a certain line of business is subject to the jurisdiction of the Federal Trade Commission, if its members are engaged in interstate commerce, and interstate commerce is directly affected by the alleged unfair methods of competition.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Trade-marks and trade-names** ☞80½, New, vol. 8A Key-No. Series—**Methods of competition which substantially affect conditions in harness trade have public interest.**

The activities of an association of harness manufacturers, which substantially affect conditions in the harness and saddlery trade, are such that proceedings by the Federal Trade Commission would be to the interest of the public, so that .the commission has jurisdiction thereof, under section 5 of the Federal Trade Commission Act (Comp. St. § 8836e).

**8. Trade-marks and trade-names** ☞68—**Trade Commission can prevent coercion to separate jobbing and retail business.**

Attempts by an association of harness manufacturers and by a saddle maker's association to coerce the separation of the wholesale and retail harness dealers, by refusing to recognize those who engage both in the wholesale and retail trade as authorized jobbers, and to prevent the sale by manufacturers of accessories to such persons, are unlawful, and may be restricted by order of the Federal Trade Commission.

**9. Trade-marks and trade-names** ☞80½, New, vol. 8A Key-No. Series—**Trade Commission Act is preventive.**

The Federal Trade Commission Act (Comp. St. §§ 8836a–8836k) is intended to afford a preventive remedy, not a compensatory one, so that the suggestion that no damage has been shown ·by the practices complained of, is no defense to proceedings before the Federal Trade Commission.

Petition to Set Aside Order of the Federal Trade Commission.

Original petition by the National Harness Manufacturers' Association against the Federal Trade Commission and others, to review an order of the Commission requiring petitioner and its co-respondents to cease certain alleged unfair methods of competition in interstate commerce. Order of Commission affirmed.

See, also, 261 Fed. 170. ·

Leonard Garver, Jr., of Cincinnati, Ohio (Lorbach & Garver, of Cincinnati, Ohio, on the brief), for petitioner.

Marvin Farrington, of Washington, D. C. (Claude R. Porter and Marvin Farrington, both of Washington, D. C., and Walter B. Wooden, of Chicago, Ill., on the. brief), for respondents.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Original petition under section 5 of the Federal Trade Commission Act (Act Sept. 26, 1914, c. 311, U. S. Comp. Stat. § 8836a et seq.) to review an order of the commission requiring petitioner and its co-respondents to cease and desist from certain alleged unfair methods of competition in interstate· commerce. The proceeding was brought against both petitioner, the National Harness Manufacturers' Association of the United States of America (hereinafter called .the Harness Manufacturers' Association, or the petitioner), its officers and the members of its executive committee by name, as well as about 20 local associations composing the membership of the Harness Manufacturers' Association, and the Wholesale Saddlery Association of the United States (hereinafter called the Saddlery Association), its officers and the members of its executive committee by name, and a large number of named persons, firms, or corpora-

tions composing the membership of that association. The order to cease and desist included both associations. The Saddlery Association asks no review of the commission's order.

The petitioner here assails that order on the grounds, first, that the Federal Trade Commission Act is unconstitutional; second, that the commision had no jurisdiction in this particular case; and, third, that the order to cease and desist is not supported by the evidence.

[1, 2] 1. The constitutionality of the act is assailed, first, as assuming—

"to combine legislative, executive, and judicial powers and functions, and to confer them upon one and the same administrative body, contrary to articles I, II, and III of the Constitution, and because it assumes to authorize the commission, which is ostensibly an administrative body, to deprive persons of their property without due process of law, contrary to the Fifth Amendment of the Constitution."

This proposition is to our minds without merit. Congress plainly has power to declare unfair methods of competition unlawful and to require that their practice cease. This Congress has done by the act in question. It with equal clearness has the power to authorize an administrative commission to determine (a) the question what methods of competition the given trader employs, and (b) provisionally the mixed question of law and fact whether such methods are unfair. These questions being determined against the trader, the administrative requirement to cease and desist, prescribed by Congress, follows as matter of course, but only provisionally. The commission's determination of these questions is not final. Not only does the statute give a right of review thereon, upon application by an aggrieved trader, to a Circuit Court of Appeals of the United States, but the commission's order is not enforceable by the commission, but only by order of court. "It is for the courts, not the commission, ultimately to determine as matter of law" what the words "unfair methods of competition" include. Federal Trade Commission v. Gratz, 253 U. S. 421, 40 Sup. Ct. 572, 575, 64 L. Ed. 993.

Throughout the proceedings, not only before the commission, but before the court, the trader is given the right and opportunity to be heard. The act delegates to the commission no judicial powers, nor does it, in our opinion, confer invalid executive or administrative authority. Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; Pennsylvania Railroad v. International Coal Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; Coopersville Co. v. Lemon (C. C. A. 6) 163 Fed. 145, 147, et seq., 89 C. C. A. 595; National Pole Co. v. C. & N. W. Ry. Co. (C. C. A. 7) 211 Fed. 65, 127 C. C. A. 561. The criticism that the statute makes the commission both judge and prosecutor is too unsubstantial to justify discussion. The constitutionality of the act, against objections similar to those presented here, has recently been sustained by the Circuit Court of Appeals of the Seventh Circuit in a considered and persuasive opinion. Sears, Roebuck & Co. v. Federal Trade Commission, 258 Fed. 307, 169 C. C. A. 323, 6 A. L. R. 358. None of the petitioner's citations contain, in our opinion, anything necessarily op-

posed thereto. Upon this record, we have no occasion to consider the construction or effect of the provision of the act which makes conclusive, if supported by testimony, the commission's findings as to facts as distinguished from conclusions of law, or of mixed fact and law. In saying so, however, we must not be understood to intimate that the provision referred to is invalid.[1]

[3] The act is also assailed as violating the Fourth Amendment to the federal Constitution, which protects against "unreasonable searches and seizures," which petitioner asserts are provided for by the so-called inquisitorial feature of section 9 (Comp. St. § 8836i), in the declaration that "for the purposes of this act the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against"; a provision whose enforcement is provided for by section 10 (section 8836j), which subjects any person to fine or imprisonment, or both, "who shall willfully refuse to submit to the commission or to any of its authorized agents, for the purpose of inspection and taking copies, any documentary evidence of such corporation in his possession or within his control."

Of this criticism it is enough to say that the provisions in question of sections 9 and 10 are not before this court. The commission has not attempted to exercise them. Section 9 otherwise contains complete provision for enforcing, by subpœna, the attendance and testimony of witnesses and the production of all documentary evidence relating to any matter under investigation. Beyond this the commission has not gone. That one attacking a statute as unconstitutional must show that the alleged unconstitutional feature injures him is settled by a long line of authorities, among which are Tyler v. Judges, 179 U. S. 405, 409, 21 Sup. Ct. 206, 45 L. Ed. 252; Turpin v. Lemon, 187 U. S. 51, 60, 61, 23 Sup. Ct. 20, 47 L. Ed. 70; Hooker v. Burr, 194 U. S. 415, 419, 24 Sup. Ct. 706, 48 L. Ed. 1046.

[4, 5] 2. By section 5 of the Federal Trade Commission Act (Comp. St. § 8836e) the commission is given jurisdiction, when it has reason to believe that "any * * * person, partnership, or corporation has been or is using any unfair method of competition in commerce, and if it shall appear to the commission that a proceeding by it in respect thereof would be to the interest of the public." Section 4 of the act (section 8836d) defines a corporation as "any company or association, incorporated or unincorporated," which either (a) is organized to carry on business for profit and has shares of capital or capital stock, or (b) is "without shares of capital or capital stock, except partnerships, which is organized to carry on business for its own profit or that of its members." The Harness Manufacturers' Association is a voluntary unincorporated association, and thus without capital stock. It is not itself engaged in business. Petitioner

---

[1] See the discussion in Buttfield v. Stranahan, supra, 192 U. S. at page 494 et seq., 24 Sup. Ct. 349, 48 L. Ed. 525; also in Union Bridge Co. v. United States, supra, 204 U. S. at pages 377–387, 27 Sup. Ct. 367, 51 L. Ed. 523; also in Coopersville Co. v. Lemon, supra, 163 Fed. at page 147 et seq., 89 C. C. A. 595.

contends that it therefore is not within the act. But this contention overlooks the fact that the association is not the only one proceeded against; but that its officers and the members of its executive committee, as well as its membership generally, are included in the proceedings as parties and made subject to the commission's order. The language of the act affords no support for the thought that individuals, partnerships, and corporations can escape restraint, under the act, from combining in the use of unfair methods of competition, merely because they employ as a medium therefor an unincorporated voluntary association, without capital and not itself engaged in commercial business. The order may be enforced by reaching the officers and members, personally and individually. A voluntary association, having many members, may be brought into court by service on its officers and such of its members as are known and can be conveniently reached, sufficient being served to represent all the diverse interests Evenson v. Spaulding (C. C. A. 9) 150 Fed. 517, 82 C. C. A. 263, 9 L. R. A. (N. S.) 904. Among the cases under the Anti-Trust Act which have enforced the liability of individual members for acts in violation of the statute, although done through a voluntary unincorporated association, are Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815, Dowd v. United Mine Workers of America (C. C. A. 8) 235 Fed. 1, 5, 6, 148 C. C. A. 495, and (apparently) Eastern States Lumber Co. v. United States, 234 U. S. 600, 34 Sup. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788. These cases we think present a satisfactory analogy to the instant case.

[6, 7] The contention that the Harness Manufacturers' Association is not engaged in commerce is answered by the consideration, first, that many of its members are so engaged; and, second, that interstate commerce is claimed to have been directly affected by the alleged unfair methods of competition. Loewe v. Lawlor, supra; Eastern States Lumber Co. v. United States, supra; Nash v. United States, 229 U. S. 373, 379, 33 Sup. Ct. 780, 57 L. Ed. 1232. The objection that the public is not interested in the activities of the association is answered by the fact that, if the commission's findings are to be accepted, trade conditions in the harness and saddlery trade have been substantially affected by the methods of competition in question. This subject will more fully appear by consideration of the nature and effect of the commission's findings.

3. The harness and saddlery trade consists broadly of three divisions: (a) Manufacturers of saddlery hardware, harness goods and horse furnishing goods; (b) wholesalers and jobbers, who buy the last-mentioned classes of goods from the manufacturers and themselves manufacture harness in wholesale quantities, selling both classes of products to the retailer; (c) retail harness dealers, who sell saddlery goods at retail and to a small extent manufacture harness.

The commission's findings of fact, so far as now important, may be thus summarized: Prior to the organization of the Saddlery Association, it was the general custom for accessory manufacturers to sell direct to retailers, and in large and important sections of the United States the wholesale and retail saddlery business has long been

conducted as one operation. The Harness Manufacturers' Association is a voluntary unincorporated association, its membership being composed largely of city and district associations in various cities throughout the states of the Union; the membership of these associations being composed of concerns engaged in manufacturing and selling harness and saddlery goods at retail, and who purchase their supplies of harness and saddlery goods largely from wholesalers and jobbers in interstate commerce, including members of the Saddlery Association. The membership of the Saddlery Association, which comprised the greater part of the wholesale saddlery trade of the United States, consisted of persons and concerns engaged in selling at wholesale harness and saddlery goods in interstate commerce throughout the various states and territories of the United States to retail dealers, both members and nonmembers of the Harness Manufacturers' Association, and in direct competition with other persons or organizations similarly engaged—its declared policy being (at variance with the condition above set forth) to promote a system of trade by which the manufacturers should sell to jobbers only, the jobbers to retailers only, and the retailers alone direct to consumers; that the Saddlery Association accordingly adopted and established a rule that concerns doing a combined and closely affiliated wholesale and retail business were not eligible to new admission into the Saddlery Association (although some of its old members were still, in various parts of the United States, doing a combined wholesale and retail business), as well as a policy that such concerns were not entitled to recognition as legitimate jobbers, and that the adoption of such rule and policy was brought about in part by the influence and pressure, and in response to the overtures of the Harness Manufacturers' Association.

The commission further found that the officers, committees, and members of the Harness Manufacturers' Association and of the Saddlery Association have actively co-operated to establish the principle that a combined and closely affiliated wholesale and retail business was not a legitimate wholesale business;[2] that the secretary of the Saddlery Association has attempted to prevent accessory manufacturers from recognizing, as legitimate jobbers, wholesalers whose names were furnished by the Harness Manufacturers' Association to the Saddlery Association as complained of by retailers for competing with them; and that the Harness Manufacturers' Association has used its influence with the Saddlery Association to prevent the admission of specific concerns to membership in the latter association and the recognition of such concerns as legitimate jobbers. The commission further found that the Harness Manufacturers' Association has requested and secured the co-operation of members of the Saddlery Association in a refusal to sell to mail order houses, hardware stores, general stores, and other competitors of retail harness

[2] It is to be noted that one of the objects of the Harness Manufacturers' Association, as stated in its constitution and by-laws, is "to protect the harness dealers from the unjust sale of goods by wholesale dealers direct to consumers."

manufacturers not recognized by the Harness Manufacturers' Association as legitimate; that the latter has refused the privilege of associate membership to accessory manufacturers and jobbers who sell to mail order houses, establishing, however, an associate membership, restricted to manufacturers, and jobbers who do not sell to consumers and to mail order houses, and who are otherwise in harmony with the policy of the association, and issuing credentials thereof to the traveling salesmen of associate members, and urging and encouraging the affiliated retailers to withdraw and withhold patronage from concerns whose salesmen were not so equipped, and have induced the members of the Saddlery Association to use their influence with the accessory manufacturers not to sell mail order houses; and that by reasons of refusals of accessory manufacturers, due to objections of the Saddlery Association, to recognize as jobbers certain competitors of members of that association, such competitors have been forced to buy from the Saddlery Association at prices higher than charged by manufacturers to recognized jobbers. The commission further found that, as a result of the opposition of the Harness Manufacturers' Association to sales by manufacturers and jobbers to the classes of competitors before mentioned, the latter had been prevented from purchasing as freely in interstate commerce as they would have been without such opposition. The findings detail many instances of specific means used to accomplish the various classes of alleged unfair methods of competition, and which we deem it unnecessary to set out.

Both the Saddlery and Harness Manufacturers' Association, its officers, committees, and members of its subsidiary and affiliated associations, were ordered to cease and desist from conspiring or combining between themselves to induce, coerce, and compel accessory manufacturers to refuse to recognize as legitimate jobbers, entitled to buy from manufacturers at jobbers' prices and terms, individuals and concerns doing or endeavoring to do a combined and closely affiliated wholesale and retail business, and from carrying on between themselves communications having the purpose, tendency, and effect of so inducing, coercing, and compelling accessory manufacturers in the respect above referred to.

The Harness Manufacturers' Association, its officers, committees, and members of its subsidiary and affiliated associations were ordered to cease and desist from (a) conspiring or combining among themselves to induce, coerce, and compel manufacturers and jobbers to refuse to sell any of the competitors of retail harness manufacturers; (b) using any scheme whereby the active membership of the Harness Manufacturers' Association concerted to favor with or confine their patronage to manufacturers and jobbers comprising the associate membership of that association or who had not complied with its active membership by selling to certain competitors thereof; (c) using or continuing any system of credentials or other indication of manufacturers and jobbers sales policies with regard to certain competitors and consumers, and from encouraging and urging retailers to confine their patronage to or to patronize manufacturers and jobbers whose sales policy is in harmony with the Harness Man-

ufacturers' Association's requirements as before set out; (d) inducing members of the Saddlery Association to use their influence with accessory manufacturers not to sell to mail order houses or other competitors of retail harness manufacturers.

[8] In our opinion, the commission's findings of fact, and the existence of the combinations, schemes, and practices directed to be discontinued, are amply sustained either by undisputed testimony or by the great preponderance of the evidence. This conclusion is not overcome by petitioner's criticisms addressed to specific features of the testimony. The findings of fact being so supported, the commission's order is, in our opinion, fully justified by the authorities to which attention has already been called, including especially Eastern States Lumber Co. v. United States, supra, where a state of facts quite similar to that found here was held to amount to a violation of the Sherman Anti-Trust Act. Comp. St. §§ 8820–8823, 8827–8830.

[9] In view of what has appeared, the criticism of lack of public injury is without force. The suggestion that no damage has been shown, even if true in fact, is answered by the consideration that the remedy afforded by the statute is preventive, not compensatory.

The order of the commission, so far as it relates to the Harness Manufacturers' Association, its officers, committees, and the members of its subsidiary and affiliated associations, is affirmed.