## ALTON WATER CO. v. ILLINOIS COMMERCE COMMISSION et al.

(District Court, S. D. Illinois, S. D. April 10, 1922.)

1. **Public service commissions ⊜⇒6—Orders within authority have force of law.**

   The Illinois Commerce Commission is a governmental agency created to apply certain rules and regulations of the legislative branch of the government, and when it acts within the powers granted to it, its acts and orders have the force and effect of acts of the General Assembly itself.

2. **Public service commissions ⊜⇒6—Acts not authorized by statute are void.**

   Acts or orders of the Illinois Commerce Commission, which do not come clearly within the powers granted to it by the General Assembly, are void.

3. **Waters and water courses ⊜⇒203(6)—Permanent suspension of water rates by Illinois Commerce Commission without fixing new rates is void.**

   Under Commerce Commission Act Ill. § 36, authorizing the Commission to suspend rates of utility for a prescribed period pending a hearing, and providing that on such hearing the Commission shall establish the rates proposed in whole or in part, or others in lieu thereof, which it shall find to be just and reasonable, the Commerce Commission had no authority permanently to suspend a schedule of rates filed by a water company without making any findings of fact or fixing any new rates.

4. **Public service commissions ⊜⇒21—Enforcement of void orders subjecting utilities to severe and numerous penalties can be enjoined.**

   Under Commerce Commission Act Ill. §§ 76, 77, imposing severe penalties for violation of the orders of the Commission, and making each violation a distinct offense, a public utility has an equitable right to enjoin the attempted enforcement of void orders of the Commission.

5. **Public service commissions ⊜⇒7—Fair present value of utility must be considered in determining reasonableness of rate.**

   The Illinois Commerce Commission in ascertaining the value of the utility property for the purpose of determining the reasonableness of its rates must consider the fair present value of the property as a going business, and the original investment or actual cost has no bearing on the question of rates, unless such cost was incurred under conditions and prices substantially the same as those prevailing at the date of the inquiry.

6. **Public service commissions ⊜⇒7—Rates should produce sufficient return to attract capital to that form of investment.**

   A utility company is entitled to charge such reasonable rates as will produce a fair net income sufficient to attract capital to it for investment.

7. **Constitutional law ⊜⇒298(3)—Rates yielding between one-half of I per cent. and I½ per cent. deprive utility of property without due process.**

   The enforcement against a waterworks company of a schedule of rates which would yield only from one-half of 1 per cent. to 1½ per cent. on the present value of the utility's property amounts, in the present financial situation, to a taking of such property without due process of law, contrary to Const. Amend. 14.

8. **Waters and water courses ⊜⇒203(10)—In determining present value, commission can consider temporary and extraordinary economic situation.**

   In determining the present value of a water company's property as a going concern, the temporary and extraordinary character of the high prices of labor, materials, and supplies incident to the unusual economic situation during the years of 1919 and 1920 should be given consideration in determining whether the valuation by the water company was based thereon.

In Equity.  Suit by the Alton Water Company against the Illinois Commerce Commission and others, to enjoin the defendants from en-

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

forcing against complainant penalties for collecting water rates in excess of those allowed by the Commission. Decree directed for complainant.

Arthur M. FitzGerald, of Springfield, Ill., for complainant.
Edward J. Brundage, Atty. Gen. of Illinois, for defendants.

FITZHENRY, District Judge. The complainant seeks to enjoin the Illinois Commerce Commission, its members, and the Attorney General of Illinois, from enforcing penalties provided in the Illinois Commerce Commission Act, for collecting water rates in excess of those allowed by the Commission.

The Water Company, on November 30, 1920, as required by the law in force at that time, filed its schedule of rates to go into effect January 1, 1921. After due notice the matter was heard by the Commission, and on December 20, 1920, the Commission passed an order suspending the effective date of the schedule until April 30, 1921. On April 26, 1921, a further extension until October 30, 1921, was made. October 26, 1921, the Commission entered a permanent suspension order. The Commission made no finding that the rates contained in the schedule submitted by the Water Company were unreasonable, nor did it attempt to fix a schedule of reasonable rates.

The Illinois statute (Laws 1921, p. 722, § 36) provides:

"The period of suspension of such rate or other charge, classification, contract, practice, rule or regulation shall not extend more than one hundred and twenty days beyond the time when such rate or other charge, classification, contract, practice, rule or regulation would otherwise go into effect unless the Commission, in its discretion, extends the period of suspension for a further period not exceeding six months. On such hearing the Commission shall establish the rates or other charges, classifications, contracts, practices, rules or regulations proposed, in whole or in part or others in lieu thereof, which it shall find to be just and reasonable."

It is claimed that the action of the Commission with reference to the order permanently suspending the rates was without authority and void; that the suspension of the rates amounted to an order against the complainant to continue to charge the rates in force at the time of the filing of the schedule in November, 1920, which ranged considerably less than the rates sought to be charged to the extent that it amounted to a confiscation and the deprivation of the complainant of its property without due process of law.

Upon the hearing it developed that the present fair cash value of complainant's property in question was $1,177,935; that its gross earnings for 1919, 1920, and 1921 were, 1919, $110,781.56; 1920, $110,460.47; 1921, $105,339.82; that the net revenues for these three years were, 1919, $25,273.43; 1920, $9,916.21; 1921, $3,340.24; that the net revenues available for return on investment for 1921 was a trifle more than one-half of 1 per cent. upon the present fair cash value of the property. The Commission contends that the revenues should be limited to such rates as will produce a reasonable return upon the original cost of the property. It was shown by the testimony of the engineers of the Commission that the original cost of the property was $538,196. During the years in question the net returns of which are

above detailed, the old rates have been in force. It was shown that under the schedule sought to be enforced by the Water Company, the gross income of the complainant would be approximately $177,000 annually, leaving, after deducting operating expenses of approximately $102,000, $75,000 net income from the property.

This case turns upon two questions: (1) Did the Commission have the power to permanently suspend the effective date of complainant's schedule of rates filed November 30, 1920? (2) Is the present fair cash value of the property to be considered in determining what the rates shall be in order to be reasonable, or must the calculation be made upon the basis of the actual cost or the original cost of the property and its appurtenances available for use in its service?

[1] The Illinois Commerce Commission, which is the successor of the Public Utilities Commission, is a governmental agency created by the General Assembly of Illinois, for the purpose of applying certain rules and regulations of the legislative branch of the state government. When it acts within the powers granted to it by the statute creating it, its acts and orders have the force and effect of the acts of the General Assembly itself. In this respect the Illinois Commerce Commission is very similar in its regulatory powers to the Interstate Commerce Commission in the scheme of the federal government. The General Assembly declared the public policy and fixed the legal principles that were to control and charge an administrative body with the duty of ascertaining, within particular fields, from time to time, the facts on which the legal principles established by law would be brought into play, just as Congress had done with reference to rates involved in interstate commerce. National Pole Co. v. Chicago & Northwestern Ry. Co., 211 Fed. 65, 127 C. C. A. 561; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Keogh v. C. & N. W. Ry. Co. (C. C. A.) 271 Fed. 444.

[2] So, on the contrary, any acts or orders of the Illinois Commerce Commission that do not come clearly within the powers granted to it by the General Assembly are void. The statute authorizing the Illinois Commerce Commission to suspend rates provides:

"The period of suspension of such rate * * * shall not extend more than one hundred and twenty days beyond the time when such rate * * * would otherwise go into effect unless the Commission, in its discretion, extends the period of suspension for a further period not exceeding six months. On such hearing the Commission shall establish the rates * * * proposed, in whole or in part, or others in lieu thereof, which it shall find to be just and reasonable." Illinois Commerce Commission Act, Laws 1921, § 36, p. 722.

Following the above excerpt of the statute, it is further provided, in the same section:

"All such rates * * * not so suspended shall, on the expiration of thirty days from the time of filing the same with the Commission, or of such lesser time as the Commission may grant, go into effect and be the established and effective rates, * * * subject to the power of the Commission, after a hearing had on its own motion or upon complaint, as herein provided, to alter or modify the same."

[3] In this particular case, the Commission heard evidence, but made no finding, and has not altered the schedule filed by the complainant in any respect. A fair reading of section 36 of the act does not disclose any authority granted by the General Assembly to the Commission to suspend rates for a longer period than 120 days and 6 months; but, on the contrary, the section itself provides that all rates filed as provided by the act, shall become effective, except such parts thereof as may have been altered or modified by the Commission itself in accordance with the provisions of the law. No other provision of the statute which might sustain the passing of the permanent suspension order, and no decision of the Illinois Supreme Court authorizing such an order, has been called to our attention, so that the order of permanent suspension comes clearly within the rule that an administrative governmental board or commission, whose order or act is beyond the scope of its powers, is void.

[4] The nature of the permanent suspension order is one of prohibition of charging the rates specified in the schedule heretofore filed by the complainant. Section 76 carries a heavy penalty against the corporation for a violation of an order of the Commission and provides that every violation of any order, decision, rule, regulation, direction or requirement of the Commission, or any part or portion thereof, is a separate and distinct offense, and in case of a continued violation, each continuation thereof shall be a separate and distinct offense. Section 77 carries penalties for persons who, either individually, or acting as an officer, agent, or employé of a public utility or corporation, shall violate any of the orders of the Commission, and provides punishment upon conviction by either fine or imprisonment or both.

To permit a situation such as is here presented to exist would be to allow a continuing menace to a utility company furnishing many thousands of people with one of the absolute necessaries of life, to say nothing of the service it renders to numerous industrial plants, and is inequitable and unjust. We are not here concerned with the question of reasonableness of the rates sought to be charged. That is a question addressed to the administrative body of the state, if it regards the rates sought to be charged in the schedule filed by the complainant to be in any respect unreasonable.

[5] A material question sought to be developed on the hearing by the defendants was that there was a vast difference between the original or historical cost of the complainant's property and its fair present value as a going concern. The parts of the Illinois Commerce Commission Act with which we are here concerned are substantially the same as the provisions of the old Public Utilities Commission Act, which it superseded, and the Illinois Supreme Court in construing the Utility Commission Act has followed the United States Supreme Court in holding that the fair present value of a utility property as a going business must be considered in determining fair and reasonable rates. Utilities Com. v. Springfield Gas Co., 291 Ill. 209, 125 N. E. 891; Cleveland Ry. Co. v. Backus, 154 U. S. 439, 14 Sup. Ct. 1122, 38 L. Ed. 1041; Omaha v. Omaha Water Co., 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991, 48 L. R. A. (N. S.) 1084; Denver v. Denver Water Co.,

246 U. S. 178, 38 Sup. Ct. 278, 62 L. Ed. 649. Original investment or actual cost could have no great bearing upon the question of rates unless the actual cost was incurred under conditions and prices which are substantially the same as the conditions and prices prevailing at the date of the inquiry. Minnesota Rate Case, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18.

[6] It has been held that no rate of return can be deemed reasonable which is not high enough to attract capital to the form of investment involved in utility properties, such as complainant's. Lincoln Gas & Electric Co. v. Lincoln, 250 U. S. 256, 39 Sup. Ct. 454, 63 L. Ed. 968. A return of 8 per cent. upon the fair value has been held to be reasonable.

[7] The proposed schedule of rates filed with the Commission in November, 1920, would produce a net return of a little less than 7 per cent. The authorities are uniform in their holding that a utility company, such as the complainant, is entitled to charge such reasonable rates as will produce a fair net income sufficient to attract capital to it for investment. Under the present rates, it is established by the evidence, the complainant upon the present valuation of its property of $1,177,935, earned but a trifle over one-half of 1 per cent. during the year 1921. Upon the basis of the value placed upon complainant's property by the engineers of the Commission $538,196, with the old rates in effect, it would have earned a net return of something less than 1½ per cent. upon the investment. Yet the defendants, in resisting the relief prayed for in this bill, seek to enforce a continuance of this condition. This, in the light of the present financial situation, would amount to a taking of complainant's property without due process of law, in contravention of the Fourteenth Amendment to the federal Constitution, and, of course, would be inequitable and unjust.

[8] In determining the present value of the Water Company's property as a going concern, it is probable that the high prices of labor, material, and supplies incident to the extraordinary economic situation existing throughout the country during the years 1919 and 1920 were reflected to a certain extent in the survey and appraisement of the complainant's engineers. This, to the extent that the Commission hereafter in determining the reasonableness of rates then being or to be charged by the complainant, should be given consideration. The court does not feel justified in attempting to ascertain whether the economic emergency above referred to has so influenced the engineers in their appraisement as to make the schedule filed in November, 1920, with the Commission, so unreasonable as to fix a limit beyond which the Water Company should not go. Of course, in determining the value of complainant's property as a going concern it would have to be ascertained as that of a water company in the light of its franchise privileges, obligations, and limitations.

The relief to which the complainant is entitled upon the face of this record is security from prosecution for the collection of the rates provided in the schedule of November, 1920, until such time, and only until then, when different rates may be fixed according to law. If the rates provided in the schedule are unreasonable and therefore unlawful

in any respect, the Illinois Commerce Commission has full power and authority to ascertain that fact and correct the schedule. However, the Commission does not possess the power to arbitrarily permanently suspend a schedule of proposed rates which have now become the legal rates of the complainant by operation of law.

The equities are clearly with the complainant, and a decree may be prepared in harmony with these views and the prayer of the bill.